## CROMBIE & CO., Inc. v. EMPLOYERS' FIRE INS. CO. OF BOSTON, MASS. et al.

### No. 4859.

Court of Civil Appeals of Texas.
El Paso.

May 21, 1952.

Rehearing Denied June 18, 1952.

---

Edwards, Belk & Hunter, El Paso, for appellant.

Jones, Hardie, Grambling & Howell, El Paso, for appellees.

SUTTON, Justice.

This appeal comes from the 41st District Court of El Paso County.

Crombie & Company, Inc., sued Employers' Fire Insurance Company of Boston and Republic Insurance Company of Dallas to recover damages sustained by the loss of a quantity of bananas stored in the warehouse and conditioning plant of the plaintiff occasioned by contact with ammonia gas. The suit was predicated on a provision of the policy which insured against loss caused by "explosion". It is alleged in the petition that an explosion occurred in the ammonia line of the refrigeration equipment in one of the banana rooms where the bananas were situated; that the stock of bananas was of the actual cash value of $1668.40, which was in fact the reasonable market value of the fruit at the time and place of loss. Copies of the policies were attached and by reference made a part of the petition. It may

be necessary later to notice other allegations but this statement will suffice for the time.

The defendants answered with a general denial and a special denial that an explosion occurred and that any loss suffered was covered by the policies sued on.

The trial was to a jury and submitted on special issues. In response to the special issues the jury answered that there was an explosion; that the damage proximately resulted therefrom; that the bananas had no value, and that the damage sustained was in the amount of $1153.60.

Prior to the submission the defendants moved for an instructed verdict, and after the return of the verdict made a motion for judgment notwithstanding the verdict, which was predicated on the same grounds as the motion to instruct. Those grounds were that the court erred in submitting any of the issues submitted to the jury, because the undisputed and uncontradicted evidence introduced upon the trial establishes the occurrence complained of was not an explosion, but on the contrary was a leak caused by a defective packing in the valve where the leak occurred, and the policies do not cover the loss suffered, and because there was no pleading nor evidence to support the submission of Issue No. 4 on damages.

Issue No. 4 was:

"What do you find from a preponderance of the evidence was the actual cash value of plaintiff's property at the time of the loss complained of in plaintiff's petition? Answer in dollars and cents."

In connection with this issue the Court instructed the jury:

"In connection with the foregoing question, you are instructed that you will not allow an amount in excess of what it would cost to replace plaintiff's property with property of like kind and quality within a reasonable time after such loss."

The answer was $1153.60, as above noted.

The Court granted the motion and rendered judgment notwithstanding the verdict that the plaintiff take nothing and that the defendants recover their costs, etc. It is from this judgment the appeal is prosecuted.

There are two points of error. The first is the Court erred in granting the motion for judgment notwithstanding the verdict, and the other the Court erred in refusing to permit plaintiff to file a trial amendment and reopen the case after the jury had retired.

The first question presented is, Does the evidence support the finding of the jury there was an explosion, or is it established as a matter of law there was none? We think there is evidence of an explosion sufficient to support the finding of the jury. Evidence bearing on the issue of explosion came from three witnesses, Antonio Zamora, the Assistant Engineer at Crombies, who was present in the banana room when the ammonia escaped; H. L. Stevens, the Engineer at the place, and Dr. J. C. Rintelen, an expert produced by the defendants.

The defendants predicate their contention the evidence establishes as a matter of law no explosion occurred on the following testimony, briefly stated:

That Zamora testified he went into banana room about 4:30 to check his unit and see that the refrigeration was going through; that everything was all right; that while in there he heard a hissing noise; that a leak is not unusual in ammonia lines; that the cut-off or by-pass valve through which the ammonia escaped had not been used in a good number of years, and that he hadn't looked at it in a good number of years.

That the witness Stevens testified the valve hadn't been used—open or closed—in a number of years; that the packing went out in the valve; that as the ammonia escaped through the valve it ate out part of it and the stem; that there was 190 pounds of pressure in the line and the valve was guaranteed for 10,000 pounds, and that he found no particles of steel in the room.

That Dr. Rintelen testified he examined the valve and it was quite obvious, like written in a book, that there was evidence

of two phenomena, basically corrosion and erosion; that there was scale on the valve which had been built up over a long period of time, and that he found no evidence of bursting or shattering.

Aside from the above, relied upon by defendants, on the issue of explosion Zamora testified he smelled no ammonia when he went into the room to check but when he turned to go out of the room "a flood bursting noise came out" and when he turned around he saw the ammonia coming from the valve fast; that he turned off the main valves very quickly to that unit and left hurriedly; that the noise was a loud hissing noise and came out suddenly and not slowly. Zamora further testified a small quantity of ammonia will give off considerable annoying fumes; that the ammonia was escaping around the stem of the valve.

Mr. Stevens testified he went into the room just before he left for home and there was no smell of ammonia and if there were leaks it would "check" you; when he arrived at home he was advised of the trouble and returned and found the room full of the gas and the bananas had turned black. He testified, as did Dr. Rintelen, that steel, the material the valve is made of, is not very corrosive, and continued saying if the gas got a start through the packing it would "blow it out"; that it blew out at the stem and the packing had gone bad; it was the pressure in there that blew it out, and once you let loose all at once it is just like an expansion from liquid to gas.

Dr. Rintelen testified there had been particles of metal literally blown away from the stem of the valve by the pressure of the emitting gas.

Our courts seem to have never had the occasion to undertake to define "explosion". Indeed, it is stated generally it does not admit of a definite definition, having no fixed and definite meaning in ordinary speech or in law, but is said to be a general term unlimited in its application, 35 C.J.S. 215 " * * * an explosion is an idea of degrees, and the true meaning of the word in each particular case must be settled, not by any fixed standard, or accurate measurement, but by the common experience and notions of men in matters of that sort. The term is to be construed in its popular sense, and as understood by ordinary men, and not by scientific men", same text and authorities there cited.

It is thought to be common knowledge that an explosion varies in intensity from the bursting of a match head or cap in a toy cap pistol, which rarely results in any damage, to that which produced the disastrous results at Texas City. Ordinary men are as capable of passing on whether or not a "phenomena" is an explosion or a leak resulting from corrosion and erosion, as a scientific man. To paraphrase the saying "an ounce of prevention is worth more than a pound of cure" a little actual and practical experience is worth more than a volume of theory, which fact is probably more apparent to the court and officers of the court than to most other people. The jury were as competent to determine whether under the facts of the case the occurrence was an explosion as any other one man, or three, or any other number less than their own number. The jury might well have concluded from the evidence a "leak" of ammonia from a very small aperture in the valve stem would have manifested itself and would have been discovered long before the aperture had been opened wide by erosion and the gas emitted in considerable volume. What difference should it make that the gas escaped from a blown packing rather than from the blown head of a compressor? In the latter instance there could hardly be any question but that an explosion had occurred. The difference is merely one of intensity or degree, it is thought.

■ A soda pop bottle blows the cap, or breaks the glass at a weak spot, so may the medicine bottle in the cabinet and the vinegar bottle in the pantry and it is said they explode. If one were insured against injury by explosion and should sustain it as the result of such "explosions" it is thought there would be no difficulty in establishing it under the facts. If a prized painting were sprayed with acid or some other substance capable of destroying it

as the result of a blown bottle cork, could it be said it did not result from an explosion? It is thought not. In the instant case it can matter little, or none, that there was corrosion and erosion preceding the blowing or exploding of the packing around the valve stem. If the entire refrigeration equipment were originally constructed strong and secure and would remain that way there would be little need for such insurance. The insurance is to protect against weaknesses and breakdowns. There is no doubt but that the release of the ammonia was sudden, and there was not an "oozing", because the evidence is in accord with common knowledge that ammonia has a quality that manifests itself readily. So, it is thought the evidence supports the finding there was an explosion of the ammonia, though the intensity or degree was much less than in great eruptions we often think about, but nevertheless an explosion.

■ The other ground relied upon for judgment notwithstanding the verdict is there was neither pleading nor proof of the amount it would cost to replace the bananas with fruit of like kind and quality within a reasonable time after the loss. The policies contained the following provision:

"Liability hereunder shall not exceed the actual cash value of the property at the time of loss ascertained with proper deduction for depreciation nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss."

The entire policies were attached as exhibits and specifically made a part of the petition for all purposes. The quoted provision was thereby pleaded verbatim and was, therefore, an allegation the liability was limited to the cost of replacement. Under Rule 59, R.C.P. it was sufficient. It is true the petition alleged the actual cash value of the fruit destroyed to be $1668.40, which it is alleged was the reasonable market value thereof. This fruit had two market values—one on the broker market to the wholesaler, and a wholesale market to the retail dealer. The cost to plaintiff in the broker market of fruit of like kind and quality would properly represent the cost of replacement. It is thought the allegation sufficient. If it were not and the defendants desired a more definite and specific allegation it could have been had on exception and objection. There were no exceptions to the pleadings.

■ We likewise regard the proof sufficient to sustain the finding of the jury, and warrant the submission of the issue on damages. This fruit had just been purchased and put in processing for delivery to the retail trade the next day following its destruction on orders already in hand. Plaintiff tendered proof of the cost to it of the fruit and no objection was made. It then offered to prove, and did prove, what the fruit had already been sold for for delivery on the following day, and objection was made to the selling price in this language:

"We will object to any evidence as to what his gross profit was. It seems to me that even if the policies were in effect he would only be entitled to the actual cost of the bananas, and no profits."

If short at all, this is little short of an admission the actual cost to plaintiff was the replacement cost. Had the witness who gave this testimony qualified and testified to the market value of fruit of like kind and quality on the broker market, such testimony would from necessity have been predicated on his dealings on the market and could have been no better than sales on the market. What better proof could there be of the replacement cost of this fruit than the price paid for it just prior to the destruction?

There was no objection to the charge of the Court. Issue No. 4 and the instruction given in connection therewith has heretofore been quoted.

■ The Court submitted the issue of damages in almost the exact language of the policy provision. A like submission has been approved, Fidelity & Guaranty Fire Corp. v. Ormand, Tex.Civ.App., 62 S.W.2d 675 (error dis.).

476

The jury found the damages to be the cost to plaintiff of the bananas in the sum of $1153.60.

It is our conclusion the Court erred in granting the motion and rendering judgment for the defendants. The judgment will be reversed and judgment here rendered on the verdict for the amount found by the jury with interest and costs.