**AMERICAN PRODUCE & VEGETABLE COMPANY, Appellant,**

v.

**PHOENIX ASSURANCE COMPANY OF NEW YORK, Appellee.**

No. 16807.

Court of Civil Appeals of Texas.

Dallas.

Nov. 18, 1966.

L. W. Anderson, Dallas, for appellant.

Bailey, Williams, Weber & Allums, and James C. Allums, Jr., Dallas, for appellee.

BATEMAN, Justice.

Appellant maintained in its place of business a refrigerated room in which it stored a large quantity of food. Ammonia was the refrigerant used. · During the night of November 21–22, 1963 ammonia escaped from the refrigerating system and contaminated much of the food. Appellee had issued to appellant an insurance policy, upon which appellant sued to recover its loss. Appellee denied liability, on the ground that a certain clause in the policy was applicable which, omitting immaterial portions, was as follows:

"6. PERILS EXCLUDED: This Policy does not insure:

"(d) Loss or damage caused by or resulting from * * * contamination, change in flavor or color * * * unless such loss or damage is caused directly by * * * bursting of pipes or apparatus * * *;"

Both sides relied on expert testimony. Appellant offered no testimony of any actual breaking or rupture of any metal pipes, valves or other metal portions of the refrigerating system but did offer the opinion testimony of its employee, Otto Caten, who had been employed by it for twenty years in maintenance of the refrigeration equipment, although he was not a professional engineer. He testified that, although the

ammonia apparently escaped by leaking through the fibrous packing in a certain valve, there had to develop a sudden opening in that packing; that the ammonia had to rupture or burst some of the fibers in the packing to escape through it. He testified that after the leak was discovered he stopped it by tightening the packing nuts on some valves and a certain flange. He went back several days later and repacked the valves. He testified that he believed it was the packing in the valves that caused the leak. On cross-examination he stated that it was a normal maintenance procedure to tighten down packing nuts from time to time because if this was not done a leak would occur; that this was true whether there was any defect in the packing or not, and that from time to time during normal maintenance he would have to replace some of the packing.

Appellee introduced the testimony of Wayne Parish, an employee of Haag Engineering Company, who testified that he had a Bachelor of Science degree in Chemical Engineering from the University of Texas, had also concluded a course in Mechanical Maintenance Engineering at Yale, and had been practicing consulting engineering for nineteen years; that some four days after the occurrence in question he visited appellant's place of business and that he inspected the valves and discussed the matter with Mr. Caten. He expressed the opinion that there was no possibility of there being a hole or fracture in the packing and that the tightening procedure would not have stopped the leak if it were due to a hole in the packing; that leakage around packing is probably the most common type of leakage in gas systems; that the packing shrinks away from the metal, losing its resilience, and does not separate at any one particular point because it is under pressure; and that in his opinion it did not happen suddenly, but would start out as a seep, and passage of the anhydrous ammonia would actually continue to dry out the packing even more and the leak would increase until you readjust the packing gland.

Thus, it was undisputed that the damage was caused by leaking ammonia. Appellant had the burden, however, of showing that the leak was caused directly by "bursting of pipes or apparatus." The jury had a right to adopt the theory advanced by either of the expert witnesses, and also to decline, as it did in answer to Special Issue No. 1, to find from a preponderance of the evidence that the loss was caused directly by a bursting of an apparatus. There being no other finding by the jury supporting appellant's claim, the court properly rendered judgment that it take nothing.

By its first point of error on appeal appellant asserts error in the rendition of a judgment based upon the answer to Special Issue No. 1 because such answer was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, and because there was no evidence or insufficient evidence to support said answer. We have carefully reviewed all of the evidence in the case and we cannot say that the jury finding in question was against the overwhelming weight or preponderance of the testimony. In our opinion the verdict was amply supported by competent evidence.

Appellant relies heavily on Crombie & Co. v. Employers' Fire Ins. Co. of Boston, Tex. Civ.App., 250 S.W.2d 472, wr. ref. n. r. e. The facts of the two cases were somewhat similar, although in the Crombie case it was necessary for the plaintiff to establish that the loss or damage had been caused by an explosion. The jury so found, but the court sustained the defendant's motion for judgment *non obstante veredicto*. That judgment was reversed and rendered for the plaintiff for the amount of damage found by the jury. We think our holding in this case is entirely consistent with that in the Crombie case. There was evidence in both cases to warrant the submission of the issue to the jury. In the Crombie case the jury found that the loss was caused by the peril insured against, which required a judgment for the plaintiff. In the case now before

us, the jury found that the loss was not caused by the peril insured against, which required the judgment for the defendant.

 Appellant in this case also filed a motion for judgment *non obstante veredicto*, which was overruled. It is a part of his first point of error that the court erred in overruling the same. To show itself entitled to a judgment notwithstanding the verdict, it was necessary for appellant to show on appeal that there was no evidence to support the verdict. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 T.L.R. 361, 362. As there was evidence to support the verdict, this contention of appellant must be overruled.

Appellant's first point of error in its entirety is overruled.

By its second point of error appellant complains again of the overruling of its motion for judgment *non obstante veredicto*, because the jury's answer of "None" to Special Issue No. 2, inquiring as to the amount of damages, if any, they found from a preponderance of the evidence the appellant had sustained as a result of the incident in question, was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, because all of the evidence was to the contrary, and demonstrated as a matter of law that the jurors were prejudiced. We see no merit in this contention.

As pointed out above, appellant was not entitled to a judgment notwithstanding the verdict because there was competent evidence to support the jury's answer to Special Issue No. 1. In view of that finding, so supported, appellee was entitled to its take-nothing judgment regardless of the extent of the damage suffered by appellant and regardless of whether the jury had found a large amount of damages or had failed to answer Special Issue No. 2 at all. That issue became immaterial in view of the answer to Special Issue No. 1. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124

S.W.2d 334; Dillon v. Moore, Tex.Civ. App., 367 S.W.2d 70, no wr. hist.

We find nothing in the record to suggest that the jury was induced by prejudice, bias or improper influence to answer the damage issue as it did. The mere fact that such answer was made despite the undisputed testimony of appellant's employees as to a certain amount of damage, is not in itself sufficient to establish such prejudice, bias or improper influence. Southern Pine Lumber Co. v. Andrade, supra.

Appellant's second point is therefore overruled.

The judgment of the trial court is

Affirmed.