George S. ORMSBY et ux., Appellants,

v.

The TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, Appellee.

No. 5938.

Court of Civil Appeals of Texas, Waco.

Oct. 26, 1978.

William C. Rice, Jr. and Lester R. Buzbee, III, Rice, Buzbee & Kleiber, Houston, for appellants.

Bill M. Payne, Lawrence, Thornton, Payne & Watson, Bryan, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from an instructed verdict in favor of the Defendant. We reverse and remand.

Plaintiff-Appellants George S. Ormsby and wife brought this suit against Defendant-Appellee Travelers Indemnity Company of Rhode Island for water damage to their residential property based upon a hazard insurance policy commonly called a fire and extended coverage policy. The insured property consisted of a two story composition frame and brick residence together with household goods contained therein. The extended coverage portion of the policy included, among other things, insurance against "explosion." The policy in question ran for a one year term, to wit, from May 13, 1973, to May 13, 1974. Plaintiffs alleged that on or about January 1, 1974, the building and contents were damaged by water escaping into the home; and more specifically, such damage was caused by an "explosion of a water line in the attic of such structure." Said policy provided a maximum coverage of $33,000.00 on the building and $6,000.00 on the contents. Plaintiffs alleged the market value of the house immediately before the damage was $70,-000.00, and immediately after the damage was $19,000.00, thereby causing alleged house damage of $51,000.00; that the market value of the contents before the damage was $10,000.00, whereas after the damage it was $2,000.00, thereby allegedly causing $8,000.00 worth of damage to said household goods.

The Defendant Insurance Company went to trial on a general denial. A jury was selected, empaneled, and sworn; whereupon, the Plaintiff Mr. Ormsby personally testified on direct and cross examination. After the lawyers on both sides completed

their respective examinations of Mr. Ormsby, counsel for the Defendant moved for an instructed verdict. At this point the record shows that Plaintiff had at least one additional witness, a Mr. Samuel Bryant, ready to testify; however, the trial court granted the Defendant's motion for instructed verdict and discharged the jury without hearing any witness other than Plaintiff Ormsby. After the jury had been discharged, counsel for Plaintiff tendered the testimony of Samuel Bryant, which the trial court heard upon a bill of exception.

Plaintiff-Appellants assert five points of error and two cross points; however, we do not deem it necessary to discuss but two of such points, to wit, that the trial court erred in granting the instructed verdict in favor of Defendant: (1) because the evidence presented by Plaintiffs raised material fact issues, and (2) because the trial court cut Plaintiffs off by granting the instructed verdict before Plaintiffs had been given an opportunity to complete the presentation of their case. We sustain both of these contentions, and reverse and remand the cause for trial on the merits.

We revert to Plaintiff-Appellants' first point, that is to say, that Plaintiffs' evidence raises material fact issues which should have been submitted to the jury.

In determining whether it was proper to instruct a verdict in this case, we must view the evidence in the light most favorable to the Plaintiffs, the losing parties; we must indulge against the instruction every inference that may properly be drawn from the evidence; and if the record reflects any testimony of probative value in favor of the losing parties, we must hold the instruction improper; a peremptory instruction is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. *White v. White* (Tex.1943) 141 Tex. 328, 172 S.W.2d 295, and the cases cited therein on p. 296.

Applying the above rules as we must to the case at bar, we hereby summarize the evidence presented: Plaintiff Mr. Ormsby testified that he and his wife lived in Houston, Texas, but that they were the owners of the two story composition frame and brick residence in question together with household furniture and contents therein located in Hilltop Lakes Subdivision in Leon County, Texas, which house and contents were insured by Defendant by the insurance policy in question; that said policy consisted of fire and extended coverage, one of the perils insured against being that of "explosion." The policy was admitted into evidence. Said policy offered a maximum coverage of $33,000.00 on the house and $6,000.00 on the contents. Ormsby testified that on or about January 4, 1974, he arrived at his home covered by the insurance policy in question to find that said home and contents had suffered extensive water damage; that it appeared the water had come from somewhere in the attic of said house.

Ormsby testified that when he entered the house, the floor was wet and sopping, but that no water would run out because most all of the water was frozen. He went upstairs first, and found the carpet was wet on the stairs; however, the condition was so bad that he could hardly see the upstairs carpet because it was under sheetrock and insulation as he climbed through the debris. Upstairs the sheetrock was down from the ceilings so that he could see the ceiling rafters, the attic; and up to the roof; the walls were bulged out from water apparently having pushed them out; the furniture had fallen apart and "looked like it was melted"; the chandelier apparently had been knocked down on a table; everything in the house was mildewed and smelled bad; there were water marks around the walls which were six or seven inches above the floors. Ormsby further testified that he discovered a copper tube or water line in the attic that had a burst on one side. This copper tubing was a hot water pipe, that is to say, that it came off from and was connected to the upstairs hot water heater. He said he assumed the pipe had frozen, and had burst and flooded the house. Ormsby also testified concerning the market value of his home and contents immediately before and after the water damage.

At the conclusion of Ormsby's testimony, but before Plaintiff-Appellants had rested, Defendant-Appellee moved for an instructed verdict which was granted by the trial court. Defendant's motion was based upon Article 5.52 of the Insurance Code of Texas, entitled, "Provisions Governing Lightning, Windstorm, Hail, Invasion, Riot, Vandalism, Strikes, Lockouts and Other Insurance; 'Explosion' Defined." The second paragraph in its pertinent parts reads as follows:

"The term 'explosion' as used above shall not include insurance against loss of or damage to any property of the insured, resulting from the explosion of or injury to (a) any boiler, heater, or other fired pressure vessel; (b) any unfired pressure vessel; (c) pipes or containers connected with any of said boilers or vessels; * * *." The gist of Defendant's motion is this: the damages sued for by Plaintiffs are shown by the plaintiffs' evidence to have been the result of the rupture of a pipe which connected with a hot water heater, which is expressly and explicitly covered by Article 5.52. In other words, Defendant-Appellee argues, the rupture of the pipe being one connected with the hot water heater, it was a "pipe" connected with a "heater," and therefore was not an "explosion" under the above-quoted language of Article 5.52.

After the motion for instructed verdict had been granted and the jury discharged, Plaintiffs tendered the evidence of Mr. Samuel Bryant on a bill of exception, which was heard by the trial court in the absence of the jury. After qualifying as an expert regarding the various types of apparati or equipment enumerated in Article 5.52, Bryant characterized the apparatus causing the damage to Plaintiffs' property as a "domestic water heater." He defined a steam boiler as a device to generate steam, for any number of purposes; he said that the direct application of heat is not characteristic of an unfired pressure vessel; that the domestic water heater is provided with thermal and pressure safety release devices, and the pressure in the hot water line is not greater than the pressure in the cold water line that connects it to the (hot water) heater; that you would not expect there to be much of a possibility of an explosion in pipes connected to a hot water heater for the reason that such hot water heater would not be expected to generate pressure; that as far as pressure is concerned, he saw no difference between that in a hot. water line or in a cold water line. The sum and substance of Bryant's testimony is that a domestic hot water heater (as in the case at bar) was neither a fired pressure vessel nor an unfired pressure vessel, which means that the burst copper pipe in question was not connected to any boiler or vessel that would fall within the definition of "explosion" in Article 5.52 which would be excluded from the "explosion" coverage of Plaintiffs' insurance policy.

■ Going back to Plaintiff-Appellants' first point of error, as hereinabove set out, the precise question before us is this: Does Plaintiffs' evidence, same being that of Ormsby and Bryant, raise any material fact issue which should have been submitted to the jury? We believe that the question of whether or not the bursted water pipe in Ormsby's house was the result of an "explosion" was a material fact issue which should have been submitted to the jury.

■ As to what constitutes an "explosion," our courts seem to have never had the occasion to undertake to define "explosion." It has been stated that it does not admit of a definite definition, having no fixed and definite meaning in ordinary speech or in law, but is said to be a general term unlimited in its application, and the true meaning of the word in each particular case must be settled, not by any fixed standard, or accurate measurement, but by the common experience and notions of men in matters of that sort. The term is to be construed in its popular sense, as understood by ordinary men, and not by scientific men. See *Crombie and Co., Inc. v. Employers' Fire Ins. Co. of Boston, Mass.* (El Paso CA 1952) 250 S.W.2d 472, NRE; *Millers Mutual Fire Ins. Co. v. Schwartz* (San Antonio CA 1958) 312 S.W.2d 313, NWH; *Oil Insurance Assn. v. Royal Indemnity Co.*

(Houston 14th CA 1975) 519 S.W.2d 148, NRE. Also see *American Casualty Co. of Reading, Pa. v. Myrick* (5th Cir. 1962) 304 F.2d 179; *Bower v. Aetna Ins. Co.* (District Court, Northern District of Texas, Dallas Division 1944) 54 F.Supp. 897; 35 C.J.S. Explosion p. 243; 12 C.J.S. Burst p. 760. Without detailing the holdings of the cases herein cited, we may see authority for the proposition that a fact issue is raised concerning whether or not a bursted water line was the result of an "explosion." We therefore hold that the instructed verdict was improper, and that the case should have been submitted to the jury.

We now turn to Appellants' second point, to wit, that the trial court erred by granting the instructed verdict before Plaintiffs had completed the presentation of their case. As stated before, after Mr. Ormsby had completed his testimony, and before Mr. Bryant was permitted to testify, the trial court instructed the verdict for the Defendant. In other words, the Plaintiffs were not permitted to complete the presentation of their evidence. We believe this constituted error, and under the record before us, was harmful to Appellants. See Volume 3, McDonald's Texas Civil Practice (1970 Revised Volume) Section 11.26, p. 227; 4 Tex.Jur.2d, "Appeal and Error—Civil Cases," Section 932, p. 635 et seq.

As we understand it, as applied to the case at bar, the purpose of a motion for instructed verdict is to call to the trial court's attention that after Plaintiffs have had full opportunity to present their evidence and have rested, that Plaintiffs have failed to prove a cause of action and therefore the Defendant is entitled to judgment as a matter of law. But in the case now before us, how can we say that the Plaintiffs at the conclusion of Mr. Ormsby's testimony had failed to prove a cause of action, when at that time the Plaintiffs had not completed their presentation of proof?

We sustain Plaintiff-Appellants' contention in this regard, and hold that the trial court erred in granting the instructed verdict before Plaintiffs had been afforded an opportunity to complete the presentation of their evidence and had rested.

For the reasons hereinabove stated, we reverse and remand the cause to the trial court for retrial.

REVERSED AND REMANDED.