**C.R. BUCKNER and Helen Buckner, Appellants,**

v.

**Laura Beth BUCKNER, Appellee.**

No. 12–89–00091–CV.

Court of Appeals of Texas, Tyler.

Aug. 30, 1991.

Joe E. Shumate, Henderson, for appellants.

Carl H. Barber, Bath, Turner, Barber & Shumate, Henderson, for appellee.

RAMEY, Chief Justice.

This appeal arose from a judgment in favor of the proponent of a will, Laura Beth Buckner. The will was offered for probate as a muniment of title more than four years after the death of the decedent, Alvin Buckner. The jury found that the delay in filing the application for probate was the result of fraud on the part of the deceased's son, C.R. Buckner. We will affirm.

The appellants are C.R. Buckner and Helen Buckner, the deceased's widow. Laura Beth Buckner has been the wife of C.R. Buckner for the past thirty-eight (38) years; a divorce action was pending at the time of the trial of this case. Alvin Buckner died on January 18, 1983. The application to probate the subject will was filed on June 27, 1988. Appellants contend that the four year statute of limitations (section 73, TEXAS PROBATE CODE) bars the admission of the will to probate.

■ Appellants' first three points pertain to the timeliness and adequacy of appellee's pleadings in responding to appellants' limitation plea. The first point complains of the trial court's failure to grant appellants' motion for instructed verdict after the parties had announced ready for trial, but before the trial had commenced. The motion for instructed verdict was premature. Such motion could have been urged after the plaintiff/proponent rested her case, but not before. 3 R. McDONALD, TEXAS CIVIL PRACTICE § 11.26.B, p. 190 (rev. 1983); *Ormsby v. Travelers Indem. Co. of Rhode Island*, 573 S.W.2d 281, 285 (Tex. Civ.App.—Waco 1978, no writ).[1] Appellants' first point of error is overruled.

■ In their second point of error, appellants assert that the trial court erred in permitting appellee to orally amend her application to probate the will after the parties had announced ready for trial. Rule 66, TEX.R.CIV.P. permits a trial court to freely allow such a trial amendment in the interest of justice when the court is not

---

1. *Ormsby* was affirmed after remand in an opinion found at 601 S.W.2d 779 (Tex.Civ.App.— Waco 1980, no writ).

satisfied that the objecting party is prejudiced thereby.

Numerous cases have held that the trial court has not committed reversible error in allowing the trial amendment unless the objecting party not only pleads surprise, but *also* asks for a continuance to prepare for the new allegations. *National Mortg. Corp. of America v. Stephens*, 723 S.W.2d 759, 762 (Tex.App.—El Paso 1986), *rev'd on other grounds*, 735 S.W.2d 474 (Tex.1987); *H.O. Dyer, Inc. v. Steele*, 489 S.W.2d 686, 688 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). Appellants did not request a continuance. Their second point of error is overruled.

By their third point of error, appellants complain that the trial court erred in proceeding to trial *after* the proponent had made her amendment to the application. This point pertains to the adequacy of the new pleading, not its timeliness. Appellants argue that the amended pleading was deficient in that the excuse alleged for the delay in filing the will for probate was the bare assertion of "fraud on the part of C.R. Buckner against the Proponent/Applicant, Laura Beth Buckner."

■ No complaint of defective pleading may be considered on appeal in the absence of a timely special exception to that pleading. Tex.R.Civ.P. 90; *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 564 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Here, however, no special exception was filed to the fraud pleading before the charge was read to the jury as required. Appellants' third point is overruled.

The appellants' next three points are evidentiary. The fourth point of error complains of the court's failure to grant an instructed verdict at the close of proponent's case-in-chief. The fifth point asserts that the court erred in failing to grant appellants' motion for new trial based on "no evidence." In the sixth point, the complaint is made that the motion for new trial should have been granted based on "insufficient evidence."

■ Point four, the complaint of the failure to grant the directed verdict, is not sustainable. After the trial court announced that he was denying the motion for directed verdict, appellants proceeded to present their evidence. Also, after all the evidence was presented, appellants did not re-urge their motion for directed verdict as required. The point was not preserved for review. *Jacobini v. Hall*, 719 S.W.2d 396, 398 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *Wenk v. City National Bank*, 613 S.W.2d 345, 348 (Tex.Civ. App.—Tyler 1981, no writ). The fourth point of error is overruled.

■ Point five challenges the legal sufficiency of the evidence to support the jury finding of fraud. In reviewing a no evidence point, we look only at the evidence that tends to support the jury verdict, and ignore all evidence to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965).

■ In reviewing a point of error alleging factual insufficiency, as in the sixth point, we must look at all the evidence and uphold the jury's finding unless it is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.).

Alvin Buckner's estate consisted of one asset, a 264 acre tract of land situated in rural Rusk County. In the subject will, Mr. Buckner devised a one-half interest in his estate to his wife, appellant Helen Buckner; the residuary was devised to his son, appellant C.R. Buckner, and his daughter-in-law, appellee Laura Beth Buckner, share and share alike in fee simple. Thus, the property in dispute is a one-fourth separate property interest in the 264 acre tract, an undivided 66 acres therein.

■ The issue is whether there was legal or factually sufficient proof that appellee was not in default in failing to offer the will for probate within the prescribed four year period, as the result of fraud on the

part of the appellant, C.R. Buckner. The jury found that Laura Beth Buckner failed to timely offer the will as a result of C.R. Buckner's fraud. The probate court thereupon entered judgment that the will be admitted to probate as a muniment of title.

C.R. Buckner's representations to his wife of the consequences of probating his father's will, or alternatively, allowing the 264 acre tract to pass by intestate succession, was a legal opinion of their respective rights under Texas law. Legal opinions will not ordinarily support an action for fraud. *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987). The reason for the rule is that everyone is presumed to know the law, and therefore one should not be permitted to rely upon another's representations of the law; but it is equally well settled that misrepresentations about a point of law are actionable if it appears that it was so intended and understood. *Safety Casualty Co. v. McGee*, 133 Tex. 233, 127 S.W.2d 176, 178 (Tex.Comm'n App.1939, opinion adopted); *Marlow v. Medlin*, 558 S.W.2d 933, 938 (Tex.Civ.App.—Waco 1977, no writ). Likewise, there are specific exceptions to the general rule pertaining to misrepresentations in legal opinions. One exception is a fiduciary or confidential relationship of trust between the communicating parties. *Fina Supply, Inc.*, 726 S.W.2d at 540. It has long been recognized in Texas that a confidential relationship does exist between a husband and his wife. *Wiley and Co. v. Prince*, 21 Tex. 637 (1858); *Bohn v. Bohn*, 455 S.W.2d 401, 406 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ dism'd).

Having established that a fiduciary or confidential relationship exists arising out of a marriage, the burden of demonstrating the fairness of the transaction passes to the person making the representation. *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 509 (Tex.1980). The husband must disclose the material facts within his knowledge and the legal consequences flowing from them to his wife. *Bohn*, 455 S.W.2d at 406. "Equity indulges the presumption of unfairness and invalidity, and requires proof at the hand of the party claiming validity and benefits of the transaction that it is fair and reasonable." *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 260 (Tex.1974).

The proponent of the will, *Laura Beth Buckner*, testified that she often requested of her husband, C.R. Buckner, that the will be probated. He would respond, "It's ours anyway. Why probate it?" He contended, "that we would be the loser if we probated it." Appellee stated that she did not probate the will because "her husband told her not to." She testified that, "I was used to doing the things he asked me to do," and that "she trusted him all these years." She acknowledged that her husband had never told her that she should not seek her own independent counsel; she had physical access to the will which was in a family lock box that she had entered 54 times since 1974, whereas C.R. Buckner had only been in the box one time in that same period. Her explanation of her more frequent contact with the lock box was that she ran the errands for the family.

The appellant, *C.R. Buckner*, on the other hand, testified that this tract of land was acquired by his grandfather and that he and his father had been born on this property. He said that all of his family, including the decedent, desired that it remain in the family. His wife discussed probating the will "Every time she got mad at my mother or me, which was quite often." She would say, "Let's probate that will. We've got to probate that [W]ill." He said that he would tell her, "No," because his mother did not want it probated. He told her, "It was ours anyway," which included this appellee, his daughter, and his mother. He told her that his mother did not want the will probated, and "there's no need in doing that." Later, appellant testified that he did not remember specifically using the word "ours," but he did not deny that he had used it in referring to the ownership of the property. He said he expected that some day the property would be his, and Laura Beth at that time would share in it as his wife; but only if they were married. Appellant denied promising his wife anything of value not to probate the will. Mr.

Buckner testified that, "it never crossed my mind what the legal consequences of not probating the will were." He mistakenly believed that his mother owned the property if the will was not probated.

Appellant called *Eunice Elizabeth Buckner*, the Buckner's 17 year old daughter as a witness. She testified to having overheard a conversation in which her mother inquired about "getting the Will probated." She said C.R. Buckner replied, "Why probate it? It's ours anyway."

Appellant, *Mrs. Helen Buckner*, decedent's 80 year old surviving widow, testified. She stated that she did not remember discussing the will with Laura Beth. Mrs. Buckner repeatedly said that she did not want the will probated, "Because there was just us and I didn't see no use in it." Mrs. Buckner testified that she expected her granddaughter, Eunice Elizabeth Buckner, to eventually have fee title to the tract. She did not know what C.R. may have said to Laura Beth about probating the will. She was not aware that if the will were not probated she would have only a life estate in one-third of the tract; she thought she owned the property as long as she lived. Nevertheless, she persisted in her preference that the will not be probated.

In summary, it is undisputed that on numerous occasions the appellee sought to have her father-in-law's will probated. It likewise is undisputed that on each of those occasions C.R. Buckner disapproved of probating that will and dissuaded her from offering the will for probate by asserting that the property was "ours" and that no purpose would be served by probate. The reference to the possessive pronoun "ours" in relation to the ownership of the property was interpreted by all of the parties to include appellee.

As long as the subject will remains unprobated, under the Texas law of intestate succession, the title to the property descended and passed to C.R. Buckner as his separate property at his father's death, subject to his mother's life estate in one-third of the land; C.R. Buckner also will receive the remainder interest upon the death of his mother. Tex.Prob.Code Ann.

§ 38(b)1. By way of contrast, if the will be probated, C.R. Buckner would be devised a smaller, undivided one-fourth separate property interest; also, instead of a one-third life estate, the surviving widow would be devised a one-half undivided interest in the land.

It was furthermore undisputed that the property in question had been in the Buckner family for several generations. It was the intention of both appellants that the property remain in the Buckner family, and that eventually the fee simple title would be in the name of the granddaughter, Eunice Elizabeth Buckner. C.R. Buckner recognized that Laura Beth would share in the property only while the wife of the owner of the property; if she ceased to be married to C.R., they desired that she would no longer have any interest in the property. By contrast, if the will were admitted to probate, appellee would have a separate property interest in an undivided 66 acres of the tract.

We conclude that there was sufficient evidence of a material misrepresentation by the appellant, C.R. Buckner, to support the submission of the issue to the jury. It is undisputed that the appellee on numerous occasions during the four years after the death of the decedent expressed a desire to have the will probated. C.R. Buckner, in each instance, disagreed, asserting that there was no need to do so because the property was theirs without probating the will. This was an incorrect statement of the law because if the will were not probated, his wife would never have any title in the land. Undisputedly, the appellants desired that the entire tract remain in the Buckner family, which would not be the case if the parties were no longer married and the will admitted to probate.

We are cognizant that C.R. Buckner throughout much of the period in question was apparently uninformed as to the law of intestate succession in Texas and its consequences upon the ownership of the subject tract. To this extent, there was no proof of his knowledge of the falsity. Nevertheless, "an unqualified statement that a fact exists, made for the purpose of inducing

another to act upon it, implies that the one who makes it knows it to be true and speaks from such knowledge, if the facts represented do not exist, and the person states of his own knowledge that they do, and induces another to act upon his statement, the law imputes to him a fraudulent purpose." *White v. Bond*, 355 S.W.2d 225, 229 (Tex.Civ.App.—Amarillo 1962), *rev'd on other grounds*, 362 S.W.2d 295 (Tex. 1962); *United States Gypsum Co. v. Shields*, 106 S.W. 724 (Tex.Civ.App.—Austin 1907), *aff'd*, 101 Tex. 473, 108 S.W. 1165 (1908).

Likewise, we find that there was sufficient evidence of C.R.'s intent to induce appellee not to probate Alvin Buckner's will. There is no dispute that Mr. Buckner's objective was to prevent Laura Beth from probating the will. If the will were probated, his title in the tract would be reduced from fee simple subject to his mother's life estate, to a one-fourth interest; Laura Beth's title would increase from none to one-fourth. Also, to retain the entire tract in the Buckner family in the event of a divorce, avoidance of probate was a prerequisite.

Appellants' misrepresentations were successful. Despite her preference for filing for probate, Laura Beth acceded to and relied upon C.R.'s representations for over five years.

Finally, the evidence is undisputed that appellee did so rely to her detriment, because her one-fourth interest could not be passed and devised to her until such time as the will had been admitted to probate.

Our review of the testimony reveals that there was some probative force to support the finding of the special issue, especially when viewed in the light most favorable to the verdict. Therefore, the no evidence point, appellants' fifth point, is overruled.

In passing on the factual sufficiency of the evidence, we have weighed all of the evidence, both favorable and unfavorable to the verdict; we find that the verdict of the jury is not so against the great weight and preponderance of the evidence that the verdict can be said to be clearly wrong and unjust. Appellants' sixth point is likewise overruled.

The judgment of the probate court is affirmed.

COLLEY, J., not participating.