# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00713-CR

**Dionisio Balderas Moreno, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 07-469-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Dionisio Balderas Moreno appeals his conviction for possession with intent to deliver cocaine in the amount of four grams or more but less than 200 grams. The jury found appellant guilty and assessed his punishment at sixty years' imprisonment.

## POINTS OF ERROR

Appellant advances four points of error, all related to issues at the punishment phase of the bifurcated trial. In his first two points of error, appellant contends that the trial court erred in overruling his "motion to suppress evidence" because his digital video disc (DVD) interview in which he confessed to two extraneous sexual assault cases was illegally obtained in violation of his right to counsel. In the first point, he relies upon article I, section ten of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure.[1] In the second point, appellant relies

---

[1] Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).

upon the guarantee in the Sixth Amendment to the United States Constitution. In his third and fourth points of error, appellant contends that he was denied the effective assistance of counsel at the punishment phase of his trial. Here, appellant relies upon the same constitutional authorities cited above.

**BACKGROUND**

On March 27, 2007, M.K., a fifteen year-old-girl, who was babysitting, came out of the apartment where she lived onto an upstairs porch at the Georgetown Place Apartments. A one-year-old child was with her. M.K. was waiting for the child's mother to arrive. Appellant came out on the porch from another apartment. He began speaking to M.K. in Spanish and English and with gestures. Appellant offered to give drugs to M.K. and made snorting motions with his nose. When M.K. asked "Cocaine?" appellant replied, "Si, Si." He grabbed her by the arm pulling her in the direction of his apartment. M.K. broke away and ran down the stairs with the child as the child's mother drove up in her automobile.

M.K. reported the occurrence. The apartment complex manager was contacted, and Georgetown police Officer George Bermudez went to investigate. Bermudez lived at the apartment complex and was a "courtesy officer" there. At appellant's apartment, Bermudez talked to him about M.K.'s accusations. Appellant went to a bedroom and brought to the officer an Oklahoma ID card identifying him as Dionisio Balderas Moreno. Appellant denied using drugs and invited Bermudez to come into the apartment to "look" for drugs. Bermudez entered, and while waiting for back-up officers to arrive, saw a straw, commonly used in consuming drugs or narcotics. When an officer arrived with the proper equipment the straw was field tested and found to be positive for cocaine.

2

With appellant's consent, an officer searched the bedroom from which appellant obtained his identification card. There the officer found several baggies of powdered cocaine. Another baggie of cocaine was found under the couch where appellant had been seated during the search. Cash in the amount of $703 was found on appellant's person. In the bedroom where the cocaine was found, the officer also discovered appellant's Mexican passport, a Mexican voter registration card, a Missouri ID card, and a social security card in his name.

Appellant was taken into custody. The next morning, on March 28, 2007, at 9:56 a.m., appellant was interviewed by police officers. In the DVD, appellant admitted that he packaged cocaine for his roommate, but generally denied consuming or distributing cocaine. This DVD was admitted into evidence at appellant's trial. The chain of custody of the cocaine found in appellant's apartment was established. Joel Budge, a chemist for the Texas Department of Public Safety, testified that he chemically analyzed the 21.3 grams of substance submitted to him and that it was cocaine. M.K. and another resident of the complex, (who testified for the defense), related that groups of people with suitcases frequently came to appellant's apartment at night and then left the next morning. They were suspected of being illegal aliens. The witnesses said that other individuals would come to appellant's apartment at odd hours of the morning knocking or pounding on the door, apparently in search of drugs.

The jury found appellant guilty as charged in the indictment of possession with intent to deliver cocaine in the amount of more than four grams but less than 200 grams, a first degree felony.

At the punishment phase of the trial, the State called C.R.J. who was thirteen years old at the time of the trial. C.R.J. testified that she was twelve years old when she met appellant at

the swimming pool of the Georgetown Place Apartments. This was prior to the time of the offense for which appellant was convicted. Appellant told C.R.J. that he was twenty-two years old. C.R.J. stated that appellant usually was with his seventeen-year-old nephew, whom she thought was "cute." After several meetings, C.R.J. and some of her friends accepted appellant's invitation to come to his apartment to watch movies. On one occasion, C.R.J. went alone to watch movies with appellant and his nephew. After the nephew left, C.R.J. reported that appellant took her to a bedroom, locked the door, turned off the light, and sexually assaulted her. She did not tell anyone for fear of getting into trouble. Thereafter, appellant began to follow her around the apartment complex. Later, appellant caught C.R.J. in the laundry room and sexually assaulted her. This time C.R.J.'s mother learned of the incident.

Appellant was indicted for the cocaine offense on May 10, 2007. While he was represented by appointed counsel on that charge and still confined in the Williamson County jail, he was interviewed by Deputy Sheriff Carlos Paniagua of Williamson County. Paniagua had been requested by the prosecutor to interview appellant about the extraneous sexual assaults on C.R.J., which were unfiled, and unadjudicated offenses.[2] Paniagua was warned not to mention or interrogate appellant about the offense charged in his pending indictment. On September 13, 2007, Paniagua went to the Williamson County jail and interviewed appellant after giving him his statutory warnings. A DVD was made of the interview in which appellant admitted the sexual assaults on C.R.J., whom he called "Rose." The DVD was admitted into evidence over objection. The DVD

---

[2] It is not clear when the prosecutor learned of the extraneous offenses.

4

supported C.R.J.'s account of the extraneous offenses also offered by the State at the punishment phase under article 37.07. *See* Tex. Code Crim. Proc. Ann. art. 37.07 (West 2009).

Appellant called a "Detective Murray," who testified that the offenses against C.R.J. had occurred in October 2006, and that at the time of trial, November 8, 2007, no charges had been filed as a result of the accusations against appellant by C.R.J. Mrs. Morgan, C.R.J.'s mother, was called by the defense. She declined, for one reason or another, to answer questions about the appropriate punishment to be assessed appellant for the possession of cocaine. At the conclusion of the punishment phase of the trial, the jury returned a verdict assessing appellant's punishment at sixty years' imprisonment.

**FIRST POINT WAIVED**

In his first point of error, appellant urges that the trial court erred in overruling his "motion to suppress" and admitting into evidence appellant's incriminating statements about two extraneous sexual assaults of a child from a DVD interview taken in violation of his right to counsel under article I, section ten of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure. We will not address this point. Appellant made no effort to preserve error in the trial court on this issue. *See* Tex. R. App. P. 33.1(a)(1). Further, to adequately brief a state constitutional issue, appellant must separately brief and proffer specific arguments and authorities supporting his contentions under the state constitution. *See Lawton v. State*, 913 S.W.2d 542, 558 (Tex. Crim. App. 1995). Where a defendant on appeal cites both federal and state constitutional claims, and does not brief his state constitutional claim separately, the point of error provides for no independent analysis under the Texas Constitution. *Matthew v. State*, 918 S.W.2d 666, 667 n.2

5

(Tex. App.—Beaumont 1996, pet. ref'd); *see generally Heitman v. State*, 815 S.W.2d 881, 890 n.23 (Tex. Crim. App. 1991); *Cambridge v. State*, 712 S.W.2d 499, 501 n.9 (Tex. Crim. App. 1986); *Hughes v. State*, 969 S.W.2d 689, 692-93 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Appellant has made no effort to show that the state constitution afforded him greater protection than its federal counterpart. In fact, appellant does not brief the issues at all but expressly stated that he was combining it with the argument under the second point of error, but does not. The point of error is waived. *Ethridge v. State*, 903 S.W.2d 1, 21 n.1 (Tex. Crim. App. 1994).

## THE FEDERAL CONSTITUTIONAL RIGHT

The question presented by the second point of error is whether the trial court erred in overruling the "motion to suppress" and admitting into evidence at the punishment phase of the trial appellant's DVD interview with Deputy Paniagua in violation of appellant's Sixth Amendment right to counsel. In the DVD, appellant confessed to two extraneous offenses of sexual assault of a child which offenses had not been filed or formally charged against appellant at the time of the making of the DVD, or the instant trial, and at a time when appellant was in custody, charged with the possession of cocaine with intent to deliver and represented by counsel in that case. His counsel was not notified of Deputy Paniagua's efforts to interview appellant about extraneous offenses.

Notice was timely given that the State intended to introduce evidence of extraneous offenses. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West 2009). There was no pretrial motion to suppress evidence. *See* Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006). The matter arose in this manner. After the guilty verdict and just prior to the punishment phase of the trial, the trial court inquired if there were matters to be disposed of before the jury returned. The

6

prosecutor stated that the court "wanted to hear Officer Paniagua." The trial court announced that it would "take up the motion to suppress." Appellant had not made such a motion. Appellant asked, however, that the State first offer proof beyond a reasonable doubt that the extraneous offenses had occurred and that appellant had participated therein. Next, appellant requested that a Rule 403 hearing on the extraneous offenses be held. Nevertheless, the court swore in Deputy Paniagua and proceeded with "a hearing" in the absence of the jury. Paniagua testified that he was instructed to interview appellant, gave him the proper warnings, and completed the DVD as recited earlier. After his testimony, arguments were heard, and, for the first time, appellant advanced his Sixth Amendment right to counsel objection. Thereafter, the trial court overruled the "motion to suppress."[3] It is apparent that from the trial court's characterization of the hearing that appellant framed his point of error. Under any circumstances, the trial court, in effect, overruled appellant's oral objection whatever the nature of the hearing.

The Sixth Amendment to the United States Constitution, upon which appellant relies, provides in part that: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." This Sixth Amendment right to counsel applies in all state criminal prosecutions in which the defendant is accused of a felony. *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963).

---

[3] Appellant also objected at the hearing on the basis of his Fifth Amendment right to counsel. He has not raised that issue on appeal or briefed it. *See* Tex. R. App. P. 38.1(h). Appellant did not make a trial objection on the basis of due process of law as set forth in the point of error and has not briefed it. *Id*. Nothing is presented for review on these matters.

In *McNeil v. Wisconsin*, 501 U.S. 171 (1991), the United States Supreme Court stated:

The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "at or after the initiation of adversary judicial criminal proceeding—whether by the way of formal charges, preliminary hearing, indictment, information, or arraignment." *United States v. Grovuaia*, 467 U.S. 180, 188, 81 L.ed.2d 146, 104 S. Ct. 2292, 1984) (quoting *Kirby v. Illinois*, 466 U.S. 682, 689, 32 L.ed.2d 411, 92 S. Ct. 1877 (1972) (plurality opinion).

501 U.S. at 175, *see also Texas v. Cobb*, 532 U.S. 162, 167-68 (2001); *Green v. State*, 934 S.W.2d 92, 97-98 (Tex. Crim. App. 1996).

*McNeil* made clear that to exclude evidence pertaining to charges to which the Sixth Amendment right to counsel had not attached at the time evidence was obtained simply because other charges were pending at that time would unnecessarily frustrate the public interest in the investigation of criminal activity. 501 U.S. at 178. Thus, incriminating statements pertaining to crimes to which the Sixth Amendment right has not yet attached are admissible at the trial of other offenses. *Id*. (citing *Maine v. Moultan*, 474 U.S. 159, 179-80 (1995)).

Further, in *McNeil*, the Supreme Court pointed out that the rule which extends the Fifth Amendment right to counsel from one crime to another does not apply to the Sixth Amendment right to counsel. *Id*. at 181; *Green*, 934 S.W.2d at 97-98.

Here, when appellant was formally charged with possession of cocaine with intent to deliver, his Sixth Amendment right to counsel was invoked with regard to that offense. Counsel was appointed to represent him. Appellant's invocation of his Sixth Amendment right to counsel on the cocaine case does not impact his Sixth Amendment right to counsel on the extraneous sexual assaults

8

that had not been charged or filed. Appellant's earlier invocation of the Sixth Amendment right to counsel with respect to the cocaine offense did not extend that right to the uncharged sexual assault offenses. *Green*, 934 S.W.2d at 98.

In *Green*, the defendant was formally charged with aggravated robbery, and counsel was appointed for him. Subsequently, an unrelated murder investigation indicated that appellant might be involved. Houston police, without notifying Green's attorney in the robbery case, questioned Green about the murder. After he was given the proper warnings, and he waived his rights, he gave a statement about the murder. At the murder trial, the statement was used by the State, and Green was convicted and sentenced to death. On appeal, *inter alia*, he contended that the admission of his statements about the uncharged murder were in violation of his Sixth Amendment right because at the time he had counsel on the pending aggravated robbery case. The Texas Court of Criminal Appeals, citing *McNeil*, rejected Green's contention, reasoning that at the time of his statements concerning the murder, no adversial judicial proceeding for that offense had been initiated, and the Sixth Amendment right to counsel had not attached.

Green was being prosecuted for murder, the offense in connection with which his "confession" was given, whereas here, appellant was being tried for possession of cocaine with intent to deliver, and the DVD statements were being offered as part of the proof of two extraneous offenses at the punishment phase of the trial under article 37.07, section 3(a). There is a factual distinction, but appellant cites no authority to demonstrate different legal consequences. We deem *Green* controlling. We reject appellant's contention. The trial court did not err in overruling appellant's Sixth Amendment objection and admitting the DVD into evidence at the punishment phase of the trial. The second point of error is overruled.

9

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his third and fourth points of error, appellant contends that he was denied, at the punishment phase of his trial, the effective assistance of counsel guaranteed by article I section ten of the Texas Constitution and the Sixth Amendment to the United States Constitution. Appellant separates his points into federal and state constitutional claims, but briefs the two together.

Although these claims were not preserved for appellate review, appellant's inaction at trial will not waive the right to make ineffective assistance of counsel claims on appeal. *Robinson v. State*, 16 S.W.3d 808, 809-10 (Tex. Crim. App. 2000); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *Blevins v. State*, 18 S.W.3d 266, 270 (Tex. App.—Austin 2000, no pet.). The claims are properly before this Court and are not challenged by the State as having been affirmatively waived.

Appellant advances the contention that by failing to object at the punishment phase to the State's closing jury argument on parole and parole eligibility, his counsel's omission resulted in ineffective assistance of counsel. He asks that his contentions be sustained and the cause be remanded for a new hearing on punishment. *See* Tex. Code Crim. Proc. Ann. art. 44.29(b) (West 2006).

We measure claims of ineffective assistance of counsel against the two-pronged standard in *Strickland v. Washington*, 466 U.S. 668 (1984), which was adopted in Texas by *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). The only variance was as to the punishment phase of a bifurcated trial. *See Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987); *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex. Crim. App. 1980). *Cruz* and *Duffy* were overruled by *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999), which held that the

10

Texas Constitution afforded no greater protection as to effective assistance of counsel than its federal counterpart. *Id.* at 772. Thus, the briefing of both points of error together is proper.

In *Strickland*, the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must (1) show that trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. 466 U.S. at 689. "Prejudice," however, is demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Absent a showing of both prongs of *Strickland*, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *McFarland v. State*, 928 S.W.3d 482, 500 (Tex. Crim. App. 1996). Whether both prongs of the *Strickland* standard have been met is to be judged by the totality of the representation rather than by isolated acts or omissions of the trial counsel, *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004), and the test is to be applied at the time of the trial, and not in hindsight. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

In assessing a claim of ineffective assistance of counsel based on deficient performance, an appellate court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, that is, the convicted defendant must overcome the presumption that, under the circumstances, the challenged action or omission might be considered sound trial strategy. *Ex parte Ellis*, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007); *Garcia*, 57 S.W.3d at 440. In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can possibly be imagined. *Garcia*, 57 S.W.3d at 440. Courts will not consider that the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *See Thompson*, 9 S.W.3d at 814. An appellate court will not speculate about trial counsel's strategy. *Blevins*, 18 S.W.3d at 272.

Under the second prong of the *Strickland* analysis, a convicted defendant must establish that the constitutionally deficient performance prejudiced his defense by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Ex parte Chandler*, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 694).

A *Strickland* claim must be firmly founded in the record, and, the record must affirmatively demonstrate the meritorious nature of the claim. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 813; *Weaver v. State*, 265 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Direct appeal is usually an inadequate vehicle for raising a *Strickland* claim because the record is generally undeveloped and inadequate to reflect the failings of trial counsel. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005);

12

*Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813-14; *see generally Massaro v. United States*, 538 U.S. 500 (2003). This is true with regard to the question of deficient performance by counsel. *Goodspeed*, 187 S.W.3d at 392. When the record is silent as to counsel's reasoning or strategy, we may not speculate to find counsel ineffective. *Weaver*, 265 S.W.3d at 538. When an appellant has not sustained his burden and the record on direct appeal is undeveloped and does not reflect the motives behind trial counsel's actions or omissions, an appellate court cannot determine a *Strickland* claim. It has been further said that trial counsel should ordinarily be given an opportunity to explain his acts or omissions before being denounced as ineffective. *Goodspeed*, 187 S.W.3d at 392; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).[4] An application for writ of habeas corpus is an appropriate way to raise the issue of ineffective assistance of counsel and develop the facts lacking in the record on direct appeal. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814-15.

Here, on direct appeal, appellant contends that his trial counsel's failure to object to the prosecutor's improper parole law argument at the punishment phase of the trial constituted deficient performance and he was prejudiced thereby when the jury assessed his punishment at sixty years' imprisonment. Thus, he claims that he was deprived of his federal and state constitutional guarantees as judged by the common standard of *Strickland*.

---

[4] Absent such an explanation, an appellate court should not find deficient performance, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); *see also Weaver v. State*, 365 S.W. 3d 523, 538 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Therefore, in a rare case, the record on direct appeal can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy. *See Robinson v. State*, 16 S.W. 3d 808, 813 n.7 (Tex. Crim. App. 2008).

At the punishment phase of the trial, the trial court charged the jury on the range of punishment for a first degree felony under article 12.32 of the penal code—life, or any term of years not less than five nor more than ninety-nine.[5]  Appellant concedes that the trial court properly charged the jury on the law of parole eligibility and good conduct time.[6]  The trial court used the exact language of article 37.07, section 4(b) of the Texas Code of Criminal Procedure as follows:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less.  Eligibility for parole does not guarantee that parole will be granted.

---

[5]  *See* Tex. Penal Code Ann. § 12.32 (West Supp. 2009).

[6]  *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 4(b) (West Supp. 2009).  This statute was enacted pursuant to article IV section 4(a) of the Texas Constitution in 1989, and held constitutional in *Oakley v. State*, 830 S.W.2d 107, 109 (Tex. Crim. App. 1992).  Prior to the 1989 constitutional amendment, a 1985 legislative amendment to article 37.07, section 4 of the code of criminal procedure (requiring trial courts to instruct juries in non-capital cases about parole laws generally) was held unconstitutional in *Rose v. State*, 752 S.W.2d 529, 535 (Tex. Crim. App. 1987), on the basis that section 4 of article 37.07 violated the separation of powers and the due course of the law doctrines.  An excellent discussion of this change in Texas law is found in Justice Frost's concurring opinion in *Byrd v. State*, 192 S.W.3d 69, 72-78 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).  *See generally Luguis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002).

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

In his jury argument on punishment, appellant's trial counsel, using a formula involving the range of punishment for a first-degree felony and the amount of cocaine seized, urged the jury to assess ten years' imprisonment and recommended probation (that issue having been submitted to the jury). In response, the prosecutor asked the jury to return a verdict of life imprisonment.

Appellant sets out at length in his brief the concluding remarks of the prosecutor which he simply characterizes as "improper," the claims that his trial counsel's performance was deficient in failing to object to the argument, and that he was prejudiced by his counsel's omission, which resulted in the imposition of a sixty-year sentence.

In his brief, appellant, however, only points to three instances in the argument which he challenges as being improper and objectionable. The brief states that the "prosecutor set the stage for the improper argument by first asking for a life sentence and then improperly telling the jury that 'this is not a case where it's a life without parole.' In other words, there would be parole and according to the prosecutor, the jury could consider that when determining the proper punishment." Appellant argues that the prosecutor was the first to interject parole into the case.

The trial court had correctly charged the jury on the range of applicable punishment, which included the possibility of life imprisonment. *See* Tex. Penal Code Ann. § 12.32 (West Supp. 2009). The prosecutor recommended to the jury the assessment of life imprisonment before mentioning that it was not a case of "life without parole." The prosecutor's remark was not a misstatement of the law, although she did not explain that "life without parole" was only a possible penalty for capital murder. *See* Tex. Penal Code Ann. § 12.31 (West Supp. 2009). Further, the trial court instructed the jury under article 37.07 section 4(b) on parole eligibility and good conduct time credit as required. In the charge, the jury was told that it may consider the existence of the parole law and good conduct time. Contrary to appellant's implications, the prosecutor did not interject "parole" into the case by her passing "life without parole" remarks. Only recently in *Ex parte Lane*, 303 S.W.2d 702, 719 (Tex. Crim. App. 2009), the court stated that it was not improper for a prosecutor in jury argument to restate the law given in the jury charge and ask the jury to take the existence of that law into consideration in assessing punishment.

In the second instance, appellant complains that the prosecutor in her argument "invited the jury to do the math in considering good-time credit." Appellant asserts this claim in his brief, but does not point to any language in the argument where such an invitation was extended. We have found no such language and are left to speculate. Appellant cites several cases where the prosecutor did expressly ask the jury "to do the math" in calculating parole eligibility and then made a misstatement of the law. *See, e.g.*, *Helleson v. State*, 5 S.W.3d 393, 398 (Tex. App.—Fort Worth 1999, pet. ref'd). This is not the case here. Appellant does not cite other authority to support his assertion.

16

An examination of the complained-of argument reveals that the prosecutor expressly directed the jury's attention to the court's required charge on the parole law, and that many of her remarks were in connection with that part of the charge. The four permissible areas of jury argument set forth in *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973), and its progeny are not as exclusive as earlier believed. As noted, it is not improper for a prosecutor in jury argument to restate the law given in the jury charge and to ask the jury to consider that law in assessing punishment. *Lane*, 303 S.W.3d at 719; *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004); *Bessey v. State*, 199 S.W.3d 546, 554 (Tex. App.—Texarkana 2006), *aff'd*, 239 S.W.3d 807 (Tex. Crim. App. 2007). It appears that a prosecutor in jury argument may properly explain how the parole eligibility rules set out in an accurate charge works with various types of sentences. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). Such explanation simply ensures that the jury understands the language set out in the court's instructions. *Id*.[7] The record does not support appellant's second instance of improper jury argument.

In the third instance, appellant complains that the prosecutor in her argument concluded with a lengthy warning to the jury about the need to "watch" appellant when he is released on parole. Appellant, without more, cites two record page numbers, does not single out the argument in question, does not cite any authority or supporting reasons for his conclusory and speculative complaint. Is Appellant contending that within the two record pages cited there was a violation of the last sentence of article 37.07, section 4(b) to which counsel was deficient in not objecting? Appellant has not briefed the matter. *See* Tex. R. App. P. 38.1(h). We cannot tell.

---

[7] Despite the foregoing authorities, the prosecution should approach jury argument on the parole law with caution.

Appellate review extends only to complaints made in accordance with our rules of appellate procedure. *Foster v. State*, 779 S.W.2d 845, 864 (Tex. Crim. App. 1989). It is not the task of an appellate court to speculate on the nature of appellant's legal theory. *Alvardo v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1998). An appellate court is not counsel for appellant, *Houston v. State*, 201 S.W.3d 212, 215 (Tex. App.—Houston [14th Dist.] 2006, no pet.), and will not make an argument for him on an issue that he has not chosen to present. *Russo v. State*, 228 S.W.3d 779, 792 (Tex. App.—Austin 2004, pet. ref'd).

Although appellant does not cite it as a basis for his ineffective assistance of counsel claim, he calls our attention to a jury note that was received by the trial court during jury deliberations on punishment:

> Is the testimony of Rose [CRJ] about the sexual assaults and Mr. Moreno's alleged admittance of the assaults admissible and considered during any parole hearing?

The trial court responded to the jury's question:

> You are advised that the law will not permit my answering your inquiry. Please refer to the instructions already given you and continue with your deliberations.

There was no objection to the trial court's answer or the procedure utilized. Other than to call our attention to what occurred during deliberations, appellant does not make any claim that this matter had any bearing on his point of error. Nothing in the prosecutor's argument expressly mentioned any parole hearing or the evidence that might be presented.

18

Appellant's claim fails for several reasons. In this case, appellant did file a motion for new trial, but did not raise the issue of ineffective assistance of counsel. The motion was overruled by operation of law. Tex. R. App. P. 21.8(c). The record is silent as to the reasoning and strategy behind the trial counsel's inaction in not making objections during the punishment phase of the trial. Appellant concedes the status of the record in this regard. Any alleged claim of ineffective assistance of counsel must be firmly founded in and demonstrated by the record on direct appeal. *Thompson*, 9 S.W.3d at 814. This is a part of appellant's burden which appellant has not met. Appellant has not rebutted the presumption that his trial counsel made all significant decisions in the exercise of reasonable professional judgment, and has not demonstrated in the record that trial counsel rendered ineffective assistance. *Id.* We will not speculate about counsel's strategic decisions and cannot find trial counsel ineffective based on unasserted grounds. *Tufele v. State*, 130 S.W.3d 267, 272 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Moreover, even if the record permitted this Court to address the complaints about appellant's counsel's performance in failing to object to the prosecutor's jury argument, we would hold that appellant has failed to show that his trial counsel's performance was deficient or that appellant was prejudiced by the conduct of his counsel. *Id.* Appellant has not established that, had his counsel objected, the result of the trial would have been different as required by the second prong of *Strickland. See Beal v. State*, 35 S.W.3d 677, 683 (Tex. App.—Houston [1st Dist.] 2000), *reversed and remanded on other grounds*, 91 S.W.3d 794 (Tex. Crim. App. 2002).

The second point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Jones, Justices Pemberton and Onion*

Affirmed

Filed:   July 8, 2010

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).