Kevin Jewell, Justice *278 In this probate case, Robert J. Stawarczik applied to probate the will of the deceased, Annie Ruth Danford. The decedent's nephews, Ervin Hunold, Jr., Michael Hunold, Steven Hunold, and Travis Hunold (collectively, the "Hunolds"), opposed the admission of Danford's will to probate and contested the validity of the will on the grounds that (1) Danford lacked testamentary capacity, and (2) Stawarczik, with whom the Hunolds alleged Danford had a fiduciary relationship, exerted undue influence on Danford. The parties filed cross-motions for summary judgment. The trial court granted Stawarczik's motion, admitted Danford's will to probate, and named Stawarczik the executor of the estate.
On appeal, the Hunolds raise numerous challenges to the summary judgment admitting Danford's will to probate, including several complaints that fact issues preclude summary judgment on their claim of undue influence. Specifically, as is relevant to our disposition, the Hunolds challenge the summary judgment on the grounds that the trial court erred in concluding that (1) Danford possessed testamentary capacity when she executed the will and (2) Stawarczik did not unduly influence Danford to execute the will in question. We agree that fact issues made summary judgment on these issues improper, and we reverse and remand for further proceedings.
Background
Annie Ruth Danford signed a purported will and a self-proving affidavit on December 23, 2010 (the "2010 Will").[1] In the 2010 Will, Danford named Stawarczik the executor and sole beneficiary of her estate.[2] On that same date, Danford executed a general power of attorney in favor of Stawarczik. Both the self-proving affidavit and the power of attorney were witnessed and notarized by the same three people: Lorraine Jennings and Ysabel Hyman witnessed the will and the self-proving affidavit; Janice Martin notarized the affidavit and the power of attorney. Stawarczik brought Jennings, Hyman, and Martin to Danford's home to execute the documents. Jennings, Hyman, and Martin had never met Danford before taking part in the signing of the documents.
Danford died on February 17, 2016. Stawarczik applied to probate the 2010 Will shortly after her death. The Hunolds filed an opposition to probate and a contest to the 2010 Will. The Hunolds asserted that the will was not valid because Danford lacked testamentary capacity on the date she signed it. Further, the Hunolds alleged that Stawarczik, who was in a fiduciary relationship with Danford by virtue of the general power of attorney, exerted undue *279 influence over Danford, resulting in the creation of the 2010 Will that Danford would not have executed but for Stawarczik's influence. Ervin Hunold, Jr. also filed an application for temporary dependent administration of Danford's estate.
In September 2016, Stawarczik filed a traditional motion for partial summary judgment and no-evidence motion for summary judgment. Stawarczik attached, inter alia , (a) a copy of the 2010 Will, (b) excerpts from his own deposition, (c) excerpts from the depositions of Jennings, Hymen, and Martin, and (d) Stawarczik's affidavit. In the portion of his motion asserting traditional grounds for summary judgment, he claimed that no issue of material fact prevented admission of the 2010 Will to probate. According to Stawarczik, because the will contained a proper self-proving affidavit, he presented a prima facie case on the issues of proper execution and testamentary capacity by introducing the 2010 Will into evidence. Stawarczik argued he was "entitled to the issuance of letters testamentary because the proof required for probate of the [2010] Will has been made, [he] is named as executor in the Will[,] and [he] is not disqualified from receiving such letters." Stawarczik additionally asserted that the Hunolds had no "competent or credible evidence of one or more essential elements of their claims that [Danford] lacked testamentary capacity on December 23, 2010 and that the will was signed by [Danford] on December 23, 2010 as a result of undue influence exerted by [Stawarczik] over [Danford]." He concluded his motion by requesting the trial court to admit the 2010 Will to probate, appoint him as independent executor of Danford's estate to serve without bond, and deny the Hunolds' claims of (1) lack of testamentary capacity and (2) undue influence.
The Hunolds filed a response to Stawarczik's summary judgment motion in October 2016. The Hunolds attached a copy of the general power of attorney, which took the form of a notarized document appointing Stawarczik as Danford's "agent (attorney-in-fact) to act for [Danford] in [a]ny lawful way with respect to all of the following powers except for a power that [she] has crossed out below." None of the powers were crossed out, and the document stated in all caps:
IF NO POWER LISTED ABOVE IS CROSSED OUT, THIS DOCUMENT SHALL BE CONSTRUED AND INTERPRETED AS A GENERAL POWER OF ATTORNEY AND MY AGENT (ATTORNEY IN FACT) SHALL HAVE THE POWER AND AUTHORITY TO PERFORM OR UNDERTAKE ANY ACTION I COULD PERFORM OR UNDERTAKE IF I WERE PERSONALLY PRESENT.
The general power of attorney is dated December 23, 2010, the same day that Danford executed the 2010 Will. The power of attorney was filed in the official public records of Brazoria County on December 30, 2010.
In their response, the Hunolds asserted that the power of attorney established a fiduciary relationship between Danford and Stawarczik as of December 23, 2010. Thus, the Hunolds argued, an inference of undue influence arose and the burden of proof shifted to Stawarczik to show that the 2010 Will was fair and equitable. The Hunolds also asserted that Stawarczik failed to establish that Danford possessed the requisite testamentary capacity when she executed the will. Specifically, the Hunolds asserted, "No persons present at the Will signing recalled anything being said about a Will actually being signed, or what property was owned, or which persons were being made beneficiaries and who *280 was being excluded. No mention was made of it being a Will ceremony."
The Hunolds filed their own combined traditional and no-evidence motion for summary judgment. In it, they claimed that they were entitled to summary judgment because "all elements of undue influence, lack of testamentary capacity[,] and breach of fiduciary duty are demonstrated and met by competent summary judgment evidence attached hereto and referenced herein."
The trial court heard the motions for summary judgment on October 31, 2016. On November 10, the court granted Stawarczik's motion and denied the Hunolds' motion, resulting in the admission of the 2010 Will to probate and Stawarczik's appointment as executor of the estate. This appeal timely followed.
Analysis
A. Standard of Review
This case involves a motion for summary judgment submitted on both traditional and no-evidence grounds. We review both types of motions de novo. See Boerjan v. Rodriguez , 436 S.W.3d 307, 310 (Tex. 2014) (per curiam).
The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c) ; Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009). If the movant produces evidence that conclusively establishes its right to summary judgment, then the burden of proof shifts to the nonmovant to present evidence sufficient to raise a genuine issue of material fact. See Centeq Realty, Inc. v. Siegler , 899 S.W.2d 195, 197 (Tex. 1995). Evidence is conclusive only if reasonable people could not differ in their conclusions. City of Keller v. Wilson , 168 S.W.3d 802, 816 (Tex. 2005) ; see also Appleton v. Appleton , 76 S.W.3d 78, 83 (Tex. App.-Houston [14th Dist.] 2002, no pet.). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. See Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005).
In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. See Tex. R. Civ. P. 166a(i) ; Timpte Indus., Inc. v. Gish , 286 S.W.3d 306, 310 (Tex. 2009). The nonmovant then must present more than a scintilla of probative evidence that raises a genuine issue of material fact supporting each element contested in the motion. See Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003) ; Wal-Mart Stores, Inc. v. Rodriguez , 92 S.W.3d 502, 506 & n.4 (Tex. 2002). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. Burbage v. Burbage , 447 S.W.3d 249, 259 (Tex. 2014) ; see also Goodyear Tire & Rubber Co. v. Mayes , 236 S.W.3d 754, 755 (Tex. 2007). The nonmovant "is 'not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements.' " Hamilton v. Wilson , 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (quoting Tex. R. Civ. P. 166a(i) cmt.-1997). Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i). But if the nonmovant satisfies its burden of production on the no-evidence motion, then the court cannot properly grant summary judgment. See *281 Smith v. O'Donnell , 288 S.W.3d 417, 424 (Tex. 2009).
B. Governing Law
Before a will is admitted to probate, the will's proponent must establish that it was properly executed and that the testator had testamentary capacity at the time of execution. See Schindler v. Schindler , 119 S.W.3d 923, 931 (Tex. App.-Dallas 2003, pet. denied) ; Guthrie v. Suiter , 934 S.W.2d 820, 829 (Tex. App.-Houston [1st Dist.] 1996, no writ). The proponent may make out a prima facie case on these issues by introducing a self-proving will into evidence.[3] Schindler , 119 S.W.3d at 931. The burden of producing evidence negating testamentary capacity then shifts to the will's opponent, although the burden of persuasion always remains with the proponent. Id. ; Bracewell v. Bracewell , 20 S.W.3d 14, 26 (Tex. App.-Houston [14th Dist.] 2000, no pet.) ; Guthrie , 934 S.W.2d at 829 ; Reynolds v. Park , 485 S.W.2d 807, 815-16 (Tex. Civ. App.-Amarillo 1972, writ ref'd n.r.e.).
A testator has testamentary capacity when she possesses sufficient mental ability at the time of execution of the will to (1) understand the effect of making the will and the general nature and extent of her property, (2) know the testator's next of kin and the natural objects of her bounty, and (3) have sufficient memory to assimilate the elements of executing a will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them. Prather v. McClelland , 76 Tex. 574, 13 S.W. 543, 546 (Tex. 1890) ; Estate of Robinson , 140 S.W.3d 782, 793 (Tex. App.-Corpus Christi 2004, pet. denied) ; Guthrie , 934 S.W.2d at 829. The key inquiry is whether the testator had testamentary capacity on the day the will was executed, which "may be inferred from lay and expert witnesses' observation of the testator's conduct prior to or subsequent to the will's execution." In re Estate of O'Neil , No. 04-11-00586-CV, 2012 WL 3776490, at *6 (Tex. App.-San Antonio Aug. 31, 2012, no pet.) (mem. op.) (citing Lee v. Lee , 424 S.W.2d 609, 611 (Tex. 1968) ).
Undue influence in the procurement of a will, on the other hand, is a ground for contesting a will "separate and distinct from the ground of testamentary incapacity; for while testamentary incapacity implies the want of intelligent mental power, undue influence implies the existence of a testamentary capacity subjected to and controlled by a dominant influence or power." Rothermel v. Duncan , 369 S.W.2d 917, 922 (Tex. 1963). The party contesting a will's execution generally bears the burden of proving undue influence. See ids="10173135" index="27" url="https://cite.case.law/sw2d/369/917/#p922">id. ; Quiroga v. Mannelli , No. 01-09-00315-CV, 2011 WL 944399, at *5 (Tex. App.-Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.). The contestant must prove the existence and exertion of an influence that subverted or overpowered the testator's mind at the time she executed the testament such that the testator executed a will that she otherwise would not have executed but for such influence. Rothermel , 369 S.W.2d at 922 ; Long v. Long , 196 S.W.3d 460, 467 (Tex. App.-Dallas 2006, no pet.).
However, a will contestant may raise a presumption of undue influence by introducing evidence of a fiduciary relationship between the testator and the will proponent.
*282 In re Estate of Pilkilton , No. 05-11-00246-CV, 2013 WL 485773, at *11 (Tex. App.-Dallas Feb. 6, 2013, no pet.) (mem. op.) (citing Spillman v. Spillman's Estate , 587 S.W.2d 170, 172 (Tex. Civ. App.-Dallas 1979, writ ref'd n.r.e.) ; Price v. Taliaferro , 254 S.W.2d 157, 163 (Tex. Civ. App.-Fort Worth 1952, writ ref'd n.r.e.) ); Rounds v. Coleman , 189 S.W. 1086, 1089 (Tex. Civ. App.-Amarillo 1916, no writ) ("Where an antecedent fiduciary relation exists, a court of equity will presume confidence placed and influence exerted."); see also Quiroga , 2011 WL 944399, at *5 (explaining that person challenging validity of instrument generally bears the burden of proving elements of undue influence, but noting that "[i]n some cases involving confidential or fiduciary relationships, ... the burden shifts to the person receiving the benefit to prove the fairness of the transaction"). If a will contestant's challenges to a will are based on a purported confidential or fiduciary relationship between the testator and the will proponent, the contestant has the burden of establishing such a relationship. In re Estate of Coleman , 360 S.W.3d 606, 611 (Tex. App.-El Paso 2011, no pet.). Once a contestant presents evidence of a fiduciary relationship, a presumption of undue influence arises and the will proponent bears the burden to produce evidence showing an absence of undue influence. Estate of Pilkilton , 2013 WL 485773, at *11 (citing Spillman , 587 S.W.2d at 172 ; Price , 254 S.W.2d at 163 ); see also Quiroga , 2011 WL 944399, at *5 ; cf. Buckner v. Buckner , 815 S.W.2d 877, 879-81 (Tex. App.-Tyler 1991, no writ) ("Having established that a fiduciary or confidential relationship exists arising out of a marriage, the burden of demonstrating the fairness of the transaction passes to the person making the representation.").
Bearing the standard of review and governing law in mind, we turn to the Hunolds' appellate issues.
C. Testamentary Capacity
We address the testamentary capacity issue first. Insofar as Danford's testamentary capacity is concerned, Stawarczik sought summary judgment on both no-evidence and traditional grounds. Ordinarily, we would address Stawarczik's no-evidence summary judgment grounds first. See, e.g. , Ford Motor Co. v. Ridgway , 135 S.W.3d 598, 600 (Tex. 2004). However, a party may not obtain a no-evidence summary judgment on an issue for which he bears the burden of proof. See Cox v. Air Liquide Am., LP , 498 S.W.3d 686, 689 (Tex. App.-Houston [14th Dist.] 2016, no pet.). Stawarczik, as the will proponent facing a contest before the will is admitted to probate, bears the burden to establish testamentary capacity. See, e.g. , In re Estate of Parrimore , No. 14-14-00820-CV, 2016 WL 750293, at *7 (Tex. App.-Houston [14th Dist.] Feb. 25, 2016, no pet.) (mem. op.) (proponent of will has burden to prove testamentary capacity). Thus, the issue of testamentary capacity is not a proper issue for a no-evidence summary judgment by Stawarczik. See In re Estate of Warren , No. 12-09-00256-CV, 2010 WL 2638067, at *2 (Tex. App.-Tyler June 30, 2010, pet. denied) (mem. op.) (holding that will proponent, having the burden of proof, could not move for no-evidence summary judgment on testamentary capacity). To the extent the trial court granted Stawarczik's no-evidence motion for summary judgment on the issue of testamentary capacity, doing so was error.
Stawarczik also sought a traditional summary judgment on the testamentary capacity issue. As noted above, Stawarczik attached the 2010 Will and the self-proving affidavit to his motion. By doing so, Stawarczik presented prima facie proof that Danford possessed testamentary capacity when she executed the 2010 Will. See, e.g. , *283 Schindler , 119 S.W.3d at 931 ; Bracewell , 20 S.W.3d at 26. But "[t]he fact that the will was self-proved does not shift the burden [to the contestants] because the contest was filed before the will was admitted to probate." Croucher v. Croucher , 660 S.W.2d 55, 57 (Tex. 1983). Thus, we must consider whether Stawarczik established as a matter of law that Danford possessed testamentary capacity on December 23, 2010, the date she signed the 2010 Will. See Estate of Parrimore , 2016 WL 750293, at *7 (citing Lee , 424 S.W.2d at 611 ) (explaining that focus of testamentary capacity inquiry is on whether such capacity existed on the day the will was executed); see also Tex. Est. Code § 251.102 (providing that proper self-proved will may be admitted to probate without testimony of subscribing witnesses, but "may not otherwise be treated differently than a will that is not self-proved"). If he did, then we consider whether the Hunolds presented sufficient evidence to raise a genuine issue of material fact.
In addition to attaching the self-proving affidavit, Stawarczik provided deposition testimony from those present at the will signing on December 23, 2010: the two witnesses (Jennings and Hyman), the notary (Martin), and himself. Both Jennings and Hyman testified that they visited with Danford for about ten minutes after Danford executed the will. Jennings stated that Danford thanked them for coming, that Danford was "very alert," and that Danford "knew what she was doing." Jennings stated that everyone, including Danford, looked over the will before signing it. Hymen, a former nurse, said she saw no signs of mental confusion or dementia in Danford. Hymen described Danford as looking "nice" and being able to carry on a normal conversation. Martin testified that, in her opinion, everyone signed the will "of their own free will" and seemed "happy to be there." Finally, according to Stawarczik, Danford had no significant health problems, dementia, or mental confusion. He described her as "mentally fine to handle all her own business." Stawarczik testified that Danford "was sharp as a tack. She still knew what she was talking about and everything.... She made her own grocery list. She made her own deposit slips out. She signed her own checks. She paid her own bills."
In their response, the Hunolds highlighted that neither Jennings nor Hyman knew Danford before each met her on December 23. Further, none of the witnesses Stawarczik offered in support of his motion could confirm that Danford knew she was signing a will; no one read the will aloud or otherwise indicated that everyone was there to witness a will signing. The Hunolds additionally provided an affidavit from Mark Wells, Danford's former foster son. Wells testified to the following. Danford began experiencing "confusion and exhibiting extremely unusual behavior" as early as 2008. She kept "large amounts of stray animals [ ]over 60-70 raccoons, a peacock, cats and other stray animals" at her home, and the home was covered in "animal feces" and "in great disrepair." Around this time, Danford frequently called 911 "at all hours of the day and night, distraught and confused." As of 2009, Danford was "homebound, in a wheelchair[,] and hardly ever left her home." Wells "personally witnessed an obvious decline in [Danford]'s physical and mental health" during late 2010 and early 2011. He found out that Danford signed "some papers" sometime shortly after December 23, 2010. Wells and Michael Hunold discovered around January 20, 2011 that the power of attorney in favor of Stawarczik, described supra , had been filed; they obtained a copy and showed it to Danford. Wells described Danford's response as "vaguely remember[ing] Stawarczik *284 putting papers in front of her and demanding that she sign something." Upon learning of the contents of this document, Danford "became extremely angry and upset." When questioned about whether she signed any other documents, Danford "denied (and obviously did not know) about the existence of the Last Will and Testament." Danford immediately revoked the power of attorney.[4] Michael Hunold also provided an affidavit recounting these events. He confirmed that Danford denied signing any documents other than the power of attorney. Michael described Danford as "very forgetful and confused" in 2010; Michael stated that Danford "would tell the same story over and over again, not realizing that she'd just told it."
We conclude that, on this record, Stawarczik failed to conclusively establish entitlement to traditional summary judgment on the testamentary capacity issue. Stawarczik failed to present evidence that Danford (1) understood that she was making a will, (2) grasped the general nature and extent of her property, or (3) assimilated the elements of executing a will, held those elements long enough to perceive their obvious relation to each other, and formed a reasonable judgment as to them. See Estate of Robinson , 140 S.W.3d at 793. For example, no one said Danford knew she was signing a will. None of the witnesses testified that Danford understood the effect of making the will or the general nature and extent of her property. No one present at the will signing stated that Danford knew her next of kin or the disposition of her property. Although a finding of testamentary capacity "does not hinge entirely" on this sort of direct evidence, see In re Estate of Arrington , 365 S.W.3d 463, 468 (Tex. App.-Houston [1st Dist.] 2012, no pet.), Stawarczik presented little evidence of Danford's mental condition on the day she executed the will.[5]
Nonetheless, assuming Stawarczik met his initial summary judgment burden, we would also conclude that the evidence presented by the Hunolds in response to Stawarczik's traditional motion for summary judgment raises genuine issues of material fact about whether, at the time Danford executed the will, she (1) understood the effect of making the will and the general nature and extent of her property, and (2) had sufficient memory to assimilate the *285 elements of executing a will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them. See, e.g. , Estate of Robinson , 140 S.W.3d at 793 (setting forth components of testamentary capacity). In fact, from the affidavit testimony from Wells and Michael, it appears that, only three weeks after she signed the 2010 Will, Danford did not recall signing it. See Croucher , 660 S.W.2d at 57 (holding that evidence indicating lack of testamentary capacity a few months before and after the date of the will's execution supported jury's finding that testator lacked testamentary capacity when he signed will); see also Estate of O'Neil , 2012 WL 3776490, at *6-8 (concluding that contestant's evidence showing confusion and declining health of testator around the time that he executed will raised a fact issue precluding summary judgment on testamentary capacity).
For the foregoing reasons, we conclude that Stawarczik failed to establish, as a matter of law, that Danford possessed testamentary capacity when she executed the will. Additionally, to the extent Stawarczik met his burden, we also conclude that the Hunolds raised genuine issues of material fact sufficient to defeat summary judgment on the testamentary capacity issue. Thus, the trial court erred in granting summary judgment in Stawarczik's favor on testamentary capacity.
We thus sustain the Hunolds' issue challenging the trial court's summary judgment on this basis.
D. Undue Influence
As noted above, the Hunolds also challenge the no-evidence summary judgment in favor of Stawarczik on the grounds that genuine issues of material fact existed on their claim of undue influence.[6] A claim of undue influence is a ground for setting aside a will distinct from a challenge that the testator lacked testamentary capacity. See Rothermel , 369 S.W.2d at 922. The burden of proving the elements of undue influence normally rests on the party challenging the validity of the instrument. Quiroga , 2011 WL 944399, at *5. But in cases involving fiduciary relationships, "the burden shifts to the person receiving the benefit to prove the fairness of the transaction." Id. Thus, our analysis turns on whether the Hunolds introduced evidence of a fiduciary relationship between Stawarczik and Danford because such evidence shifts the burden of proving a lack of undue influence to Stawarczik. See itation index="59" url="https://cite.case.law/citations/?q=2011%20WL%20944399">id. (refusing to shift burden to individual receiving benefit to show no undue influence because of lack of fiduciary relationship); Estate of Coleman , 360 S.W.3d at 611 (explaining that, if will opponent's challenges to a will are based on confidential relationship between testator and proponent, opponent has burden of establishing confidential relationship).
The Hunolds attached evidence to their summary judgment response showing that Danford appointed Stawarczik her attorney-in-fact on the same date that Danford executed the 2010 Will in which Danford named Stawarczik executor of her estate and sole beneficiary. The Hunolds asserted in their summary judgment response:
It is undisputed that Annie Danford, Decedent, signed a Statutory Durable Power of Attorney to Robert Stawarczik, Proponent, on December 23, 2010, thereby creating a clear fiduciary relationship.
*286 On that same day-at the same time-he also had her sign the purported Last Will and Testament that he now seeks to admit to probate. See Exhibit "1" (Power of Attorney) and Exhibit "2" (Will).
"A power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law." Miller v. Lucas , No. 02-13-00298-CV, 2015 WL 2437887, at *4 (Tex. App.-Fort Worth May 21, 2015, pet. denied) (mem. op.) (citing In re Estate of Miller , 446 S.W.3d 445, 454-55 (Tex. App.-Tyler 2014, no pet.) ). Thus, the Hunolds presented some evidence showing that, at the time of the execution of the 2010 Will, Stawarczik and Danford shared a fiduciary relationship. See ids="6904902" index="63" url="https://cite.case.law/sw3d/446/445/#p454">id. ; see also Estate of Coleman , 360 S.W.3d at 611.[7]
In short, the Hunolds produced evidence that raised a presumption of undue influence. This evidence necessarily raises a fact issue sufficient to defeat a no-evidence motion for summary judgment. Cf. In re Estate of Chapman , No. 14-13-00041-CV, 2014 WL 261027, at *5-7 (Tex. App.-Houston [14th Dist.] Jan. 23, 2014, no pet.) (mem. op.) (reversing no-evidence summary judgment in favor of will proponent because contestant presented more than a scintilla of evidence of undue influence); Estate of Coleman , 360 S.W.3d at 610 (no-evidence summary judgment improper on claim for which the moving party bears the burden of proof."); cf. also In re Estate of Luthen , No. 13-12-00576-CV, 2014 WL 6632952, at *1 (Tex. App.-Corpus Christi Nov. 24, 2014, no pet.) (mem. op.) (reversing trial court's summary judgment admitting codicil to probate because evidence created genuine fact issues on claim of undue influence); Hernandez v. Grey Wolf Drilling, L.P. , 350 S.W.3d 281, 285-86 (Tex. App.-San Antonio 2011, no pet.) (in employment discrimination case, no-evidence summary judgment was not proper because employer moved for summary judgment on elements on which it bore burden of proof and employee's affidavit provided more than a scintilla of evidence on elements of prima facie claim).
For the foregoing reasons, we sustain the Hunolds' challenge to the trial court's summary judgment on their claim of undue influence.
Conclusion
Having determined that fact issues precluded summary judgment on the issues of testamentary capacity and undue influence, we reverse the trial court's summary judgment order admitting the 2010 Will to probate and remand for proceedings consistent with this opinion.[8]

See Tex. Est. Code §§ 251.101, 251.104.

Undisputedly, Danford was not married and had no children, as she stated in the 2010 Will.

The will and affidavit in this case meet the statutory requirements for a self-proving will. See Tex. Est. Code §§ 251.101 (defining a self-proved will), 251.104 (requirements for self-proving affidavit).

Around this same time, Danford "signed a Criminal Trespass Warning against Stawarczik"; a police officer gave Stawarczik the warning and told him not to come back onto Danford's property. Within the year, however, Danford "rescind[ed] the trespass warning."

Courts have concluded that a will proponent established testamentary capacity when witnesses testified that the testator had sufficient mental ability at the time he executed the will to understand that he was making a will and the will's effect. See, e.g. , In re Estate of Hemsley , 460 S.W.3d 629, 635-37 (Tex. App.-El Paso 2014, pet. denied) (two lawyers testified that they met with testator shortly before will was signed and testator "was in full possession of his faculties," lawyer who drafted will went over each provision of will in detail with testator, witnesses to will had both known testator for several years and stated testator understood the will and what he was doing); In re Estate of Arrington , 365 S.W.3d 463, 468 (Tex. App.-Houston [1st Dist.] 2012, no pet.) (subscribing witnesses, one of whom had known testator for twenty years, testified that testator was of sound mind when he signed the will; notary stated testator told her "he was signing his will and that it needed to be notarized"; testator's sisters testified that testator "maintained his mental faculties until his death"); In re Estate of Vackar , 345 S.W.3d 588, 595-96 (Tex. App.-San Antonio 2011, no pet.) (testator's long-term friend testified that testator had discussed his desire to leave all his property to his sister-to the exclusion of other potential heirs; nurse testified that will was read aloud to testator before he signed it and she believed that testator "understood what he was doing when he signed his will").

The Hunolds' "Issues Presented" do not precisely match the argument section of their brief. But the gist of their complaints concerning undue influence center on their assertions that, as a fiduciary, Stawarczik bore the burden of proving a lack of undue influence and that they created a fact issue on this claim.

Stawarczik asserts that the Hunolds failed to establish that he was a fiduciary "either when the will was signed or when it was prepared" because it is "not known whether the power of attorney was signed before or after the will." But the Hunolds, as nonmovants, needed only to point out evidence raising a genuine issue of material fact. See, e.g. , Hamilton , 249 S.W.3d at 426 ; Centeq Realty, Inc. , 899 S.W.2d at 197. Having proved that Danford signed a power of attorney on the same day she signed the 2010 Will, sufficient evidence exists to allow a factfinder to reasonably infer that Danford signed the power of attorney in such temporal proximity to the 2010 Will that a fiduciary relationship existed at the relevant time. We resolve all evidentiary doubts in the nonmovants' favor for summary judgment purposes. Forbes Inc. , 124 S.W.3d at 172.

Ordinarily, when, as here, both sides file cross-motions for summary judgment, we may properly consider all motions and render the judgment that the trial court should have rendered. Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist. , 46 S.W.3d 880, 884 (Tex. 2001) ; see also Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc. , 323 S.W.3d 151, 153-54 (Tex. 2010). However, the Hunolds do not raise any issues challenging the trial court's denial of their motion for summary judgment nor do they seek rendition of judgment in their favor. Rather, in their prayer, as well as in the substance of their arguments, they seek only reversal of the trial court's summary judgment in favor of Stawarczik.