

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00122-CV

In the **ESTATE OF** Ava Lorene **MAHAFFEY**, Deceased

From the County Court at Law, Kerr County, Texas
Trial Court No. CCL16-16
Honorable Susan Harris, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
     Rebeca C. Martinez, Justice
     Luz Elena D. Chapa, Justice

Delivered and Filed: December 27, 2019

REVERSED AND REMANDED

This is an appeal from a trial court's order granting Michele DeBellis's traditional motion for summary judgment in a will contest. Anna Crosswhite contends the trial court erred in granting DeBellis's traditional motion for summary judgment because she raised genuine issues of material fact regarding the testamentary capacity of the deceased, Ava Mahaffey.

## BACKGROUND

Mahaffey signed a purported will and a self-proving affidavit on October 25, 2016 (the "October 25th Will"). Elizabeth Jesko, the attorney who drafted the will, and Morgan Wayne Dale witnessed the October 25th Will and self-proving affidavit. Jesko's assistant acted as notary. The October 25th Will made bequests to Mahaffey's three sisters, but excluded her fourth sister,

Crosswhite. The residue of Mahaffey's estate was left to DeBillis. DeBillis was the great-niece of Mahaffey's late husband.

Mahaffey died nine days later on November 3, 2016 of pancreatic cancer. Shortly thereafter, DeBillis applied to probate the October 25th Will, and Crosswhite contested the will on the ground that Mahaffey lacked testamentary capacity on the date the October 25th Will was executed. In the event the October 25th Will was found to be invalid, Crosswhite sought to offer for probate another will, also drafted by attorney Jesko, that Mahaffey had purportedly executed on October 6, 2016 (the "October 6th Will"). In the October 6th Will, the residue of Mahaffey's estate was left to Crosswhite. The October 6th Will did not include a bequest to DeBillis.

DeBillis filed a traditional motion for summary judgment asserting that her summary judgment proof conclusively established Mahaffey had testamentary capacity at the time the October 25th Will was executed. The trial court granted DeBillis's traditional motion for summary judgment. On appeal, Crosswhite contends her summary judgment evidence raised genuine issues of material fact regarding Mahaffey's testamentary capacity at the time the October 25th Will was executed.

## STANDARD OF REVIEW

A summary judgment is reviewed *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, the movant "has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). "If the movant produces evidence that conclusively establishes its right to summary judgment, then the burden of proof shifts to the nonmovant to present evidence sufficient to raise a genuine issue of material fact." *In re Estate of Danford*, 550 S.W.3d 275, 281 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197

(Tex. 1995)). "In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true," and "[e]very reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor." *Nixon*, 690 S.W.2d at 548–49.

## TESTAMENTARY CAPACITY

"A testator must be of 'sound mind,' which means having testamentary capacity at the time the testator executes the will." *In re Estate of O'Neil*, No. 04-11-00586-CV, 2012 WL 3776490, at *6 (Tex. App.—San Antonio Aug. 31, 2012, no pet.) (mem. op.). "The key inquiry is whether the testator had testamentary capacity on the day the will was executed[.]" *In re Estate of Danford*, 550 S.W.3d at 281. A testator has testamentary capacity at the time of execution if she possesses sufficient mental ability to:

> (1) understand the effect of making the will and the general nature and extent of her property, (2) know the testator's next of kin and the natural objects of her bounty, and (3) have sufficient memory to assimilate the elements of executing a will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them.

*Id.* (citing *Prather v. McClelland*, 13 S.W. 543, 546 (Tex. 1890)). DeBillis, as the will proponent facing a contest before the will is admitted to probate, bears the burden of establishing testamentary capacity. *See In re Estate of O'Neil*, 2012 WL 3776490, at *6.

As evidence in support of her traditional motion for summary judgment, DeBillis attached a copy of the October 25th Will and self-proving affidavit; attorney Jesko's affidavit; the partial deposition testimony of Jesko; and the partial deposition testimony of Dale, a witness to the execution of the October 25th Will.

Jesko first met Mahaffey in October 2016. During her visits with Mahaffey, Jesko found her to be of sound mind and with sufficient mental ability to express her wishes in making her will. On October 24, 2016, Mahaffey expressed her desire to disinherit Crosswhite and revoke

Crosswhite as her power of attorney. Additionally, Mahaffey wanted DeBellis added to her will and for DeBillis to serve as executor and as her power of attorney. Jesko drafted the will as instructed.

When Jesko arrived at Mahaffey's home on October 25, 2016, Mahaffey was alert and sitting up in bed waiting for her with a clipboard, pen, and checkbook. Jesko, Jesko's assistant, and Dale were present in the room with Mahaffey. After engaging in small talk with Mahaffey about various subjects, Mahaffey appeared to be lucid, competent, and not under duress. Mahaffey recalled what provisions she wanted added to the will and her reasons for doing so. Mahaffey confirmed her desired disposition in the revised will and powers of attorney and understood she was making specific bequests to her three sisters, leaving the remainder to DeBillis, and disinheriting Crosswhite. Mahaffey understood the general nature and extent of her property by explaining she had cash in her home, a home in Kerrville, and several bank accounts with payable on death designations and without payable on death designations. She recalled the date of her late husband's death, her family history, and that her family consisted of her sisters and her husband's great-niece. It was Jesko's opinion that Mahaffey was fully competent to execute the October 25th Will as her own free act and deed.

In describing the will execution ceremony, Jesko testified that she and Mahaffey compared the October 6th Will with the October 25th Will and thoroughly discussed the changes made. They went over the specific bequests to her three sisters, the residuary bequest to DeBillis, and DeBillis's role as executor. Mahaffey took her time reading over the new will, confirmed that the will accurately reflected her desired disposition, and expressed to those present in the room her satisfaction with the will. Mahaffey executed the will, initialing each page one-by-one.

DeBellis also attached the deposition testimony of Dale. Dale was a long-time friend of Mahaffey's. They first met in either 1997 or 1998. According to Dale, during the last stages of

Mahaffey's life, Mahaffey handled her business like always, managed all her own banking and financial business, and kept perfect books. There was not a noticeable difference in Mahaffey's mental abilities or sharpness. Dale confirmed Mahaffey wanted to disinherit Crosswhite, and that he acted as a witness to that change in the will. Dale testified that at the time the October 25th Will was executed, Mahaffey had all her mental faculties.

We conclude that, on this record, DeBillis met her initial summary judgment burden of establishing the elements of testamentary capacity. *See In re Estate of O'Neil*, 2012 WL 3776490, at *8. Based on the foregoing summary judgment evidence, Mahaffey understood that the effect of the October 25th Will would result in the disinheritance of Crosswhite. On October 24 and 25, 2016, Mahaffey maintained that her intention was to remove Crosswhite from her will. Mahaffey knew the general nature and extent of her property. Mahaffey knew she had cash at her house, a home in Kerrville, and various bank accounts. Mahaffey managed her own banking and financial accounts. Mahaffey knew her next of kin and the natural objects of her bounty. Mahaffey provided Jesko with her family history, the date of her husband's death, and that her family consisted of her sisters and her late husband's great-niece. Mahaffey understood that she was disposing of assets to her sisters and the remainder to DeBellis. Mahaffey had "sufficient memory to assimilate the elements of executing a will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them." There was not a noticeable difference in Mahaffey's mental abilities or sharpness. Mahaffey handled her business like always and managed her own banking and financial accounts. Jesko always found Mahaffey to be of sound mind. Mahaffey was clear in her directions to Jesko regarding how she wanted her assets distributed and was able to articulate her reasons for making such a disposition. Throughout the will execution ceremony, Mahaffey was alert, lucid, and had all her mental faculties. She actively

participated in the will execution ceremony by reading the documents one by one, signing each page, and expressing her satisfaction with the will's provisions.

Because DeBillis produced evidence that established her right to summary judgment, the burden shifted to Crosswhite to present evidence sufficient to raise a genuine issue of material fact as to Mahaffey's testamentary capacity. *See In re Estate of Danford*, 550 S.W.3d at 281.

Crosswhite presented no direct evidence that Mahaffey lacked testamentary capacity on the day the will was executed. If there is no direct evidence indicating that the testator lacked testamentary capacity on the date of execution, "[e]vidence of incompetency at other times can be used to establish incompetency on the day the will was executed." *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983). Thus, the testator's mental condition on the date of execution may be inferred "from lay opinion testimony based upon the witnesses' observations of [the] testator's conduct either prior or subsequent to the execution." *In re Estate of Graham*, 69 S.W.3d 598, 606 (Tex. App.—Corpus Christi-Edinburg 2001, no pet.) (citing *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968)). However, evidence of incapacity at other times only has probative force if that evidence demonstrates that the testator's "condition persists and has some probability of being the same condition that existed at the time the will was made." *Id.*

> Thus, to successfully challenge a testator's [testamentary] capacity with circumstantial evidence from time periods other than the day on which the will was executed, the will contestants must establish (1) that the evidence offered indicates a lack of testamentary capacity; (2) that the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed; and (3) that the evidence provided is of a satisfactory and convincing character . . . .

*Id.* "Importantly, the number of witnesses supporting or contesting the question of testamentary capacity is irrelevant. The only question [to resolve for a traditional summary judgment] is whether the testimony raised a question of fact." *In re Estate of O'Neil*, 2012 WL 3776490, at *6.

Crosswhite contends she provided some evidence showing that Mahaffey was mentally incompetent both before and after the date the October 25th Will was executed. Crosswhite testified that as Mahaffey's cancer and pain progressed, she grew more and more confused about what she was doing. Mahaffey was tired all the time, irrational, and forgetful to the point where she would easily lose her train of thought. As an example of her declining mental condition, Crosswhite recalled that around mid-October, Mahaffey opened a can of green beans and served them to her cold as a meal.

On October 24, 2016, the day before the will execution, Mahaffey's pain was so unbearable that she requested emergency assistance for pain relief. Mahaffey reported to EMS that she had taken a total of seven hydrocodone pills over the course of eight hours and that her pain was still severe. Peterson Hospice prescribed Mahaffey morphine to ease her pain. At some point later in the evening, Mahaffey demanded that Crosswhite give her all her pills so that she could commit suicide and Crosswhite refused. According to Crosswhite, Mahaffey could not be reasoned with, so Crosswhite called the police and Peterson Hospice for help.

Crosswhite provided the testimony of Nurse Amy Ives from the Peterson Hospice care facility. Ives testified she received a call from the Peterson Hospice operator. The operator claimed Mahaffey told her that she was going to take all her pills and end it all. After the call was connected to Ives, Mahaffey again reiterated she was going take all her pills and end it all. When Ives arrived at Mahaffey's residence, Mahaffey ordered Crosswhite and Peterson Hospice personnel out of her house and revoked her hospice care. Revocation of her hospice care meant all the medications prescribed by Peterson Hospice were removed from Mahaffey's home, leaving Mahaffey without pain relief or treatment. It was Ives's opinion that Mahaffey was a harm to herself and that it was inappropriate to leave her home alone. Crosswhite testified that Mahaffey was confused and could not understand what was happening that night. Dale testified that when

Mahaffey revoked her hospice benefit, which included her pain relief medications, she was not thinking rationally because of the tremendous pain she was in.

On October 26, 2016, the day after the will execution, Mahaffey again requested emergency assistance for pain relief. Mahaffey reported to EMS she had been without her pain relief medications for twenty-four hours and her hospice care had been terminated the day before. Notably, Mahaffey's hospice care was terminated *two* days prior on October 24, 2016, not the day before as Mahaffey stated. A Plan of Care and Treatment form signed on October 26, 2016 by Mahaffey's attending physician, Dr. Johnson, and Alamo Hospice personnel reveals that Mahaffey experienced periods of confusion, fatigue, forgetfulness, and was prone to poor judgment. The form also indicated that Mahaffey required assistance for all activities for daily living, except for feeding.[1]

Viewing the evidence in the light most favorable to Crosswhite and indulging every reasonable inference in her favor, there is some evidence that Mahaffey, as a result of her declining condition, suffered from periods of confusion, a failing memory, and irrational decision-making on the day preceding and the day after the will's execution. *See Croucher*, 660 S.W.2d at 57–58 (finding some evidence of lack of testamentary capacity when the summary judgment evidence showed the testator had a failing memory due to arteriosclerosis both before and after the will was executed); *see also In re Estate of O'Neil*, 2012 WL 3776490, at *8 (finding some evidence indicating a lack of testamentary capacity when, in the days preceding the will's execution, the

---

[1] Crosswhite also claims the October 25th Will was executed during a time when Mahaffey had consumed 160 hydrocodone tablets in 4.5 days. Mahaffey was prescribed 160 hydrocodone on October 21, 2016. Because Mahaffey told EMS on October 26, 2016 that she had been without pain medications for twenty-four hours, Crosswhite contends the only logical inference is that Mahaffey had consumed all 160 hydrocodone tablets during the period between October 21, 2016 and October 25, 2016. However, Crosswhite's speculation does not create a fact issue. *See Am. Tobacco Co. v. Grinnel*, 951 S.W.2d 420, 437 (Tex. 1997); *see also Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) (per curiam) ("[W]hen the circumstantial evidence is so slight that any plausible inference is purely a guess, it is in legal effect no evidence.").

testator suffered from confusion and declining health). Given evidence of Mahaffey's declining condition, periods of confusion, and worsening memory, there is a genuine issue of material fact as to whether Mahaffey possessed sufficient mental ability to understand the effect of making the October 25th Will, and whether Mahaffey had "sufficient memory to assimilate the elements of executing a will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them." *See In re Estate of Danford*, 550 S.W.3d at 281. Because there is some evidence indicating Mahaffey could have lacked testamentary capacity on the day preceding and the day after the will's execution, we conclude Crosswhite's summary judgment evidence raised genuine issues of material fact about whether Mahaffey possessed testamentary capacity at the time the October 25th Will was executed. Consequently, we conclude the trial court erred in granting DeBellis's traditional motion for summary judgment.

## CONCLUSION

We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

Rebeca C. Martinez, Justice