# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00012-CV

**Cindy Castello, Appellant**

**v.**

**Executor of the Estate of Frank Castello, Deceased, Appellee**

### FROM THE 155TH DISTRICT COURT OF FAYETTE COUNTY
### NO. 2019V-246, THE HONORABLE DWIGHT E. PESCHEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves a will contest. Frank Castello (Decedent) died on June 22, 2018, leaving a self-proving will executed on June 18, 2012 (the 2012 Will) devising all his property to his wife, Cindy Castello, "for life" and the remainder to his three children by a prior marriage. In the 2012 Will, Decedent appointed as Executor his son, Mark Anthony Castello. Mark[1] filed a petition to admit the 2012 Will to probate, and Cindy filed an opposition, alleging Decedent's lack of testamentary capacity and attaching a 2009 will that she contended should be admitted to probate instead.[2]

Mark filed a motion for summary judgment, arguing that there is no genuine issue of material fact regarding Decedent's testamentary capacity and seeking to dismiss Cindy's

---

[1] Because the parties have the same surname, for clarity we use their first names.

[2] The 2009 will devised Decedent's personal property and several tracts of real property to Cindy and devised other real-property tracts to Decedent's children.

opposition. He attached to his motion the following evidence: the 2012 Will, the affidavit of Mike Steinhauser (the attorney who drafted the will and who initially represented Mark in this matter before the trial court), and a warranty deed dated October 26, 2012. He prayed that the court grant his motion, dismiss Cindy's opposition claim, and enter an order admitting the 2012 Will to probate. Cindy filed a response to Mark's motion, to which she attached as evidence her own affidavit and excerpts from Steinhauser's deposition.[3]

The trial court granted Mark's motion and admitted the 2012 Will to probate. Cindy perfected this appeal and argues that summary judgment was improper because she presented evidence creating a material fact issue on Decedent's testamentary capacity. Because we agree with Cindy, we reverse the trial court's order and remand this cause for further proceedings.

## DISCUSSION

The burden of proving that a Decedent had testamentary capacity is on the will proponent. *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983). A proper self-proving will is sufficient to admit the will to probate and requires no further proof of testamentary capacity, *see*

---

[3] The day before the summary-judgment hearing, Cindy filed an amended response to which she attached additional evidence: letters from two of Decedent's physicians. However, the record does not demonstrate that she obtained leave of court to file a late response and nothing in the record "affirmatively indicates" that the trial court accepted or considered the late-filed amended response. *See* Tex. R. Civ. P. 166a(c) (noting that deadline for responding to summary-judgment motion is seven days prior to hearing, except on leave of court); *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259–60 (Tex. 2020) (noting that when record does not indicate that trial court granted leave for late response, courts should examine whether record "affirmatively indicates" response was "accepted or considered"); *K-Six Tel., Inc. v. Santiago*, 75 S.W.3d 91, 96 (Tex. App.—San Antonio 2002, no pet.) ("If the record contains nothing indicating that the trial court considered a late-filed response, we presume the trial court did not consider it, and the response will not be considered on appeal."). Therefore, we limit our review to the evidence attached to Cindy's original response.

*Guthrie v. Suiter*, 934 S.W.2d 820, 829 (Tex. App.—Houston [1st Dist.] 1996, no writ), and after the will is admitted to probate, the burden shifts to a will contestant to establish that the testator lacked testamentary capacity, *see In re Estate of O'Neil*, No. 04-11-00586-CV, 2012 WL 3776490, at *6 (Tex. App.—San Antonio Aug. 31, 2012, no pet.) (mem. op.). However, if a will contest is filed *before* the will is admitted to probate, as here, the burden of proving capacity remains with the will proponent, and the proponent must prove that the testator had testamentary capacity. *Id.* (citing *Croucher*, 660 S.W.2d at 57). In such event, a self-proving will is not, without more, sufficient to prove testamentary capacity. *See Estate of Danford*, 550 S.W.3d 275, 283 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also* Tex. Est. Code § 251.102 (providing that proper self-proved will may be admitted to probate without testimony of subscribing witnesses but "may not otherwise be treated differently than a will that is not self-proved"); *In re Estate of Hogan*, No. 11-20-00170-CV, 2022 WL 2070331, at *4 (Tex. App.—Eastland June 9, 2022, no pet.) (mem. op.) (noting that because will contestant produced some evidence to negate testamentary capacity, court had to "look further than the bare fact" of self-proving will to determine whether legally sufficient evidence supported finding of requisite testamentary capacity).

The proper inquiry for whether a testator has testamentary capacity is the condition of the testator's mind on the day the will was executed. *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968). "Testamentary capacity" means that the testator possessed sufficient mental ability at the time of execution of the will to (1) understand the business in which he was engaged, the effect of making the will, and the general nature and extent of his property; (2) know his next of kin and the natural objects of his bounty; and (3) have sufficient memory to assimilate the elements of the business to be transacted, to hold those elements long enough to

3

perceive their obvious relation to each other and to form a reasonable judgment as to them. *Guthrie*, 934 S.W.2d at 829 (citing *Prather v. McClelland*, 13 S.W. 543, 546 (Tex. 1890)).

Whether the testator had testamentary capacity on the day the will was executed "may be inferred from lay and expert witnesses' observation of the testator's conduct prior to or subsequent to the will's execution." *O'Neil*, 2012 WL 3776490, at *6. When there is no direct evidence that the decedent lacked testamentary capacity on the day that he executed his will, a will contestant may introduce evidence of incompetency at other times that can be used to establish incompetency on the day the will was executed if it "demonstrates that the condition persists and 'has some probability of being the same condition which obtained at the time of the will's making.'" *Croucher*, 660 S.W.2d at 57 (internal citations omitted). When a will contestant seeks to use this type of evidence to support the lack of testamentary capacity, the evidence must be (1) of the kind that would indicate lack of testamentary capacity and (2) probative of the decedent's capacity, or lack thereof, on the date the will was executed. *Id.*

Within this framework, we consider the parties' summary-judgment evidence to determine, de novo, whether Mark met his burden to show the absence of a material fact issue with respect to Decedent's testamentary capacity at the time of the 2012 Will's execution. *See* Tex. R. Civ. P. 166a(c) (outlining movant's summary-judgment burden); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (outlining de novo standard of review for summary judgments).

### *Mark's evidence*

In his affidavit, Steinhauser averred that during June 2012 he assisted Decedent in the drafting of his will. He and Decedent "discussed the contents of [Decedent's] estate and his

wishes for how, and to whom, he desired it to pass upon his death." Based on his conversations with Decedent before June 8, 2012, and observing him on that date, Steinhauser "determined that [Decedent] was aware of and understood the business in which he was engaged, the effect of making a will, the general nature and extent of his property, [and] his next of kin and the objects of his bounty" and "was of sound mind." After these discussions, Steinhauser drafted the 2012 Will. On the date of the will's execution, Steinhauser met with Decedent, reviewed the will with him, confirmed with Decedent that the will expressed his desires and witnessed its execution.

In the October 26, 2012 warranty deed, Decedent and Cindy (as "Grantor") conveyed a tract of real property in Galveston County to two specified grantees for "cash and a note" payable to a mortgage company. The deed contained Decedent's and Cindy's signatures and was notarized. Mark argued in his motion that Cindy's implied acknowledgement in the warranty deed that Decedent had contractual capacity in October 2012 cuts against her position that he did not have testamentary capacity just a few months earlier.

### Cindy's evidence

In her affidavit, Cindy averred that she and Decedent were married in 1991, at which time they each "had an ongoing business." Cindy and Decedent henceforth operated their respective businesses from the same location. In 2006, Decedent "suffered a stroke, and his condition went down from there, [and] by 2008, he was unable to operate or oversee his business, [and] his physical condition required him to have a caretaker to watch over him." Between the time of Decedent's stroke through 2008, Cindy "would take [Decedent] to the office with [her] each day but by 2008 he was unable to comprehend the operation of his business, [and] he could not make bids, quotes, or review contracts as he did not understand the day-to-day

5

operations or functions of his business anymore." From 2008 until his death, Decedent "was under the care of a caretaker or [Cindy,] as he needed someone to watch over him 24 hours a day." Decedent could not walk without the assistance of a walker, and "his mental ability to function began to grow worse." Cindy further averred that

> [Decedent] began to not recognize his family members or remember if he just ate breakfast or lunch without being told. He would respond to you as if he knew what you were saying to him but did not have the ability to comprehend the subject of the conversation.

> From 2008 thru [sic] the time of his passing, [Decedent] had a very limited relationship with his children. In 2011, [he] was cared for by either myself or Margaret Maroofo who took care of him while I was at work. Each day when I would come home from work, I would have to confer with Margaret about [Decedent's] meals and what he did during the day as he did not have the mental capacity to remember if he ate or what he did that day.

> Although if you did not know about his medical condition or the medications he was taking if you asked him a question he would respond as if he understood although was [sic] speech was very slurred. On the day before, the day of executing the will, the day after and all other days in [Decedent's] life, he did not know what properties he had, he did not have the ability to make decisions on his own or understand the consequences of his actions.

> Attached hereto are two letters from [Decedent's] doctors[4] regarding the relevant time frame validating the Alzheimer Dementia, he was on medications for.

> Being a primary caretaker of [Decedent], it is my position on the date that [he] executed the proposed will, he did not have the sufficient mental ability to understand the business that he was engaged in, the effect of making the will, the general nature and extent of the property to know his next of kin and the natural objects of his bounty, no sufficient memory to assimilate the elements of the business or to be able to make a reasonable judgment regarding what he was doing. If I ask [sic] [Decedent] in the evening what he had for lunch, he would not remember. [H]e would always rely on me to talk to his doctors or others on his behalf. If I would take him out to eat to get him out of the house he was not capable of ordering his own food. [Decedent's] mental health and capacity to make decisions or understand what he was doing did not exist for a number of years.

---

[4] The letters were not attached to the response, although they were attached to Cindy's amended response, which we have already determined we may not consider.

From the time of his stroke, I was his financial support and made sure he had someone to watch over him at all times and cared for him daily.

Knowing [Decedent] and being with him every day, it was impossible for him to have the capacity to execute and change his will or make any other decisions that would require him to think and act on his own accord with an understanding of what he was doing.

In the excerpted portions from Steinhauser's deposition attached to Cindy's response, Steinhauser testified that he did not know much about Decedent's mental capacity except what he "gleaned from the phone conference [he had with Decedent] and [from] seeing him in person that day when he signed the Will." He was "completely unfamiliar" with Decedent's "day-to-day activities and what he was capable of doing." Steinhauser did not know whether Decedent was taking any medications or whether he had received any diagnoses for dementia or otherwise, because he did not ask about those issues. Steinhauser also clarified that, although in his affidavit he averred that he had discussed with Decedent the "contents of his estate," he in fact did not discuss the specific contents of the estate with Decedent—such as how much land he owned and whether any of it was outside of Texas or how much he had in his bank account—because Steinhauser did not deem it necessary after Decedent had telephoned him and told him, very simply, what he wanted to do: leave all his estate to his children but give his wife a life estate. Steinhauser spent about fifteen or twenty minutes with Decedent on the date of the will's execution, but he did not remember anything specific about the conversation he had with Decedent on that date because he generally just makes "small talk" with clients when meeting for a will execution.

**ANALYSIS**

7

We assume, without deciding, that Mark met his initial summary-judgment burden to establish that Decedent had testamentary capacity on the date of the 2012 Will's execution and thus consider whether Cindy produced evidence raising a fact question on the issue. *See Danford*, 550 S.W.3d at 281. In considering Cindy's evidence, we must accept as true that which favors her position, indulging every reasonable inference and resolving all doubts in her favor, *see Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, (Tex. 1985), and we acknowledge that the question of testamentary capacity is ordinarily one of fact for the jury, *see In re Estate of Grimm*, 180 S.W.3d 602, 605 (Tex. App.—Eastland 2005, no pet.). Also, in our de novo review of a summary-judgment ruling, our duty is to determine if any genuine issues of material fact exist, not to weigh the evidence or determine credibility. *See Cummins v. Travis Cnty. Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 53 (Tex. App.—Austin 2005, pet. denied).

Cindy's evidence shows that Decedent's physical health and mental functioning had been declining since his stroke in 2006, and that by 2008 he could not manage or understand the day-to-day operations or functions of his business and needed a twenty-four-hour caregiver. It also shows that during the period the will was executed, Decedent was on medication for Alzheimer's disease; did not recognize his family members; could not remember what he did during the day or what he ate (or even whether he ate) while Cindy was away at work; did not possess sufficient memory to make decisions for himself, including ordering at a restaurant; and relied on Cindy to speak to doctors or others on his behalf. Cindy's evidence also showed that she, having known Decedent as his wife for over twenty years when he died and having been around him every day, believed that at the time of the 2012 Will's execution Decedent did not have the mental capacity to execute a will, understand the effect of making a will or know the

8

general nature and extent of his property or his next of kin and the natural objects of his bounty, or make "any other decisions that would require him to think and act on his own accord with an understanding of what he was doing." Additionally, Steinhauser testified that he had not discussed the specific contents of Decedent's estate with him, despite the statement in his affidavit to the contrary, creating an issue of fact on whether Steinhauser could have opined on the aspect of Decedent's testamentary capacity requiring him to know the "general nature and extent of his property."

Cindy's evidence, in the form of her affidavit, is of the type that both shows a lack of testamentary capacity and is probative of such lack at the time the 2012 Will was executed. *See Croucher*, 660 S.W.2d at 57. The evidence of Decedent's declining mental and physical condition since his 2006 stroke, and of his persisting conditions of impaired memory and ability to comprehend day-to-day business or make decisions for himself since 2008 and until his death—while not constituting direct evidence of Decedent's testamentary capacity on the date of the will's execution—is sufficient circumstantial evidence to raise a genuine question of fact as to his capacity on that date. *See id.* (holding that evidence indicating lack of testamentary capacity few months before and after date of will's execution supported jury's finding that testator lacked testamentary capacity when he signed will); *Danford*, 550 S.W.3d at 281 (concluding that evidence showing that three weeks after testator signed will, she did not recall signing it, and that beginning two years before its signing, testator began exhibiting confusion and "extremely unusual behavior" raised material fact issue); *In re Estate of Chapman*, No. 14-13-00041-CV, 2014 WL 261027, at *5 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, no pet.) (mem. op.) (concluding that evidence that testator was diagnosed with condition that affected her mental status, including her decision-making, memory, and ability to care

9

for herself, in months leading up to and following will's execution raised material fact issue); *O'Neil*, 2012 WL 3776490, at \*6 (concluding that evidence showing confusion and declining health of testator around time that he executed will raised material fact issue); *Grimm*, 180 S.W.3d at 606–07 (concluding that evidence showing testator's chronic impairment of cognitive mental abilities and delusional thinking, both before and after will's execution, created material fact issue); *Guthrie*, 934 S.W.2d at 830–31 (concluding that evidence that testator was able to follow only simple instructions without exercising independent judgment and could not take care of herself, and that such condition existed for much of her adult life and persisted after will's execution, raised material fact issue).

Although Mark contends that Cindy's affidavit is "self-serving and conclusory," many of the statements therein are of the same character as those in Steinhauser's affidavit. That is, each Steinhauser and Cindy aver their respective—and opposing—beliefs about whether Decedent "understood the business in which he was engaged, the effect of making a will, the general nature and extent of his property, and his next of kin and the objects of his bounty." But, unlike Cindy's affidavit, Steinhauser's does not describe any facts from which his conclusions are drawn, except to state that after Decedent "confirmed that the Will expressed his desires," he and his staff witnessed the will. To determine on summary judgment that Steinhauser's beliefs conclusively establish Decedent's testamentary capacity when countered by Cindy's similarly stated beliefs—and more—would require determinations as to the weight and credibility of the evidence, which is the province of the factfinder. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Additionally, although the 2012 warranty deed likely weighs against Cindy's position, it should be considered by the factfinder along with the entirety of the

evidence and does not conclusively establish that Decedent had testamentary capacity on the date of the 2012 Will's execution, in light of Cindy's conflicting evidence.

We hold that Cindy presented sufficient evidence to show the existence of a material fact issue with respect to Decedent's testamentary capacity at the time of the 2012 Will's execution. Accordingly, we conclude that the trial court erred in granting Mark's motion for summary judgment and admitting the 2012 Will to probate.

## CONCLUSION

We reverse the trial court's order granting Mark's summary-judgment motion and admitting the 2012 Will to probate and remand this cause for further proceedings in accordance with this Court's opinion.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, Theofanis

Reversed and Remanded

Filed:   June 23, 2023